UNITED STATES, Appellee

v

PHILLIP SCOTT, Basic Airman, U. S. Air Force, Appellant

11 USCMA 646, 29 CMR 462

No. 13,859

Decided July 8, 1960

*Lieutenant Colonel James L. Kilgore* and *Major Charles K. Rush* were on the brief for Appellant, Accused.

*Colonel John F. Hannigan* and *Major John C. Wiley* were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, confinement at hard labor for three months, and forfeiture of $25.00 per month for three months. Intermediate appellate authorities affirmed, and we granted accused's petition for review on the issue whether he was subject to military jurisdiction at the time of his trial.

Accused enlisted in the United States Air Force on September 4, 1958, for a term of four years. On July 9, 1959, his discharge for unfitness was ordered by an authorized commander under the provisions of Air Force Regulations 39–17, March 17, 1959. On July 10, 1959, accused completed the procedures necessary for clearing his base and received a final settlement of his pay and allowances. A general discharge certificate and copies of special orders announcing his separation from the service were delivered to him. He signed out of his organization, but did not leave the area. Subsequently, a radio belonging to another airman was discovered to be missing. During the late afternoon, the radio was found in the quarters of a third airman. He identified the accused as the person who had left it there. At 6:00 p.m., the accused voluntarily confessed to the theft. At 6:45 p.m., the base commander ordered his discharge revoked, and the accused was notified of this action at 7:30 p.m. He was thereafter confined in the stockade, and his discharge certificate was taken from him. His trial took place on August 4, 1959.

Jurisdiction to try the accused depends upon whether he was in the Air Force at the time of the commencement of the proceedings against him. Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1956); Kinsella v United States, 361 US 234, 4 L ed 2d 268, 80 S Ct 297 (1960); McElroy v United States, 361 US 281, 4 L ed 2d 282, 80 S Ct 305 (1960); Grisham v Hagan, 361 US 278, 4 L ed 2d 279, 80 S Ct 310 (1960). The answer to this question in turn depends upon whether accused's discharge became effective upon delivery of the certificate and orders to him or whether, as the Government contends, it did not operate to separate him from the service until midnight, July 10, 1959.

Section 8811, Title 10, United States Code, provides pertinently:

"(a) A discharge certificate shall be given to each lawfully inducted or enlisted member of the Air Force *upon his discharge*." [Emphasis supplied.]

This statute and its predecessors have long been construed to separate a member of the armed services upon delivery to him of the discharge certificate or other valid notice of the ending of his status. Digest of Opinions, The Judge Advocate General, 1901, pages 323, 324; Digest of Opinions, The Judge Advocate General, 1912, page 448; Digest of Opinions of The Judge Advocate General of the Army, 1912–1940, page 998; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 548; Davis, A Treatise on the Military Law of the United States, 1903, page 352; United States v Christian, 22 CMR 780; United States v Banner, 22 CMR 510; United States v Santiago, 1 CMR 365; Hironimus v Durant, 168 F2d 288 (CA 4th Cir) (1948). Moreover, we inferentially recognized the effect of this view when we pointed out in United States v Downs, 3 USCMA 90, 11 CMR 90, and United States v Klunk, 3 USCMA 92, 11 CMR 92, the necessity of compliance with formal discharge procedures in order to terminate military jurisdiction. The Government nonetheless contends that a different rule must be applied, as Air Force Regulations 39–17,

**647**

supra, provide that accused's discharge, regardless of the time that the certificate is delivered, shall not become effective until midnight on the date he receives it.

A similar argument was pressed upon the Supreme Court in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949). There, the Navy sought to overcome the long continued administrative interpretation of a jurisdictional statute by arguing that it had been changed in that service by a lawfully promulgated naval regulation. A unanimous Court refused to permit court-martial jurisdiction to be enlarged in such a manner, pointing out that they did not believe Congress intended the general regulatory power of the Secretary of the Navy so to be used. We agree with the rationale of that case and deem it dispositive of the Government's argument here.

As noted above, the armed services have long interpreted discharge statutes to mean that an individual is no longer a member of the armed forces after he receives notice that he has been validly separated. That view is entirely consonant with the terms of 10 USC § 8811, supra, and if it is to be changed, Congress must do it. Hirshberg v Cooke, supra. Moreover, if a service is permitted to delay for a few hours the effective date of a discharge merely by regulatory provision, what is to prevent them from using the same device to extend military jurisdiction over a member of the armed forces for a few days, a few weeks, or even a few years? Such an exercise of their regulatory authority would raise grave constitutional questions, but it is apparent that power to continue an individual in the service for a short period beyond discharge rests upon no sounder basis than the extension of his service for a longer time. Nor are we impressed by the argument that the delay is necessary in order to protect the separated individual during his journey homeward, for it is clear that many service members would be unable to complete their travel within the prescribed time limit. On the other hand there are indications that the purpose of the regulation was to maintain jurisdiction over such individuals as this accused. Cf. Toth v Quarles, supra. Other means to prevent crime after discharge and prior to departure of the individual from his station must be found in the absence of the legislation we deem necessary.

For the foregoing reasons, we conclude that one's military service, with the concomitant jurisdiction to try him by court-martial, ends with the delivery to him of a valid discharge certificate. 10 USC § 8811, supra; United States v Banner, United States v Santiago, both supra. Accordingly, it appears that the accused was not a person subject to the Code at the time of his offense and trial, and the proceedings concerning him were a nullity.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. The charges are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

A voluntary enlistment contract changes the status of a person from a civilian to a member of the Armed Forces. A discharge is the reverse for it terminates the contract and returns the serviceman to a civilian status. By law, there are certain formalities which must be complied with before a change in status is effectuated. In connection with separation of an airman from the Air Force prior to the termination of the period of enlistment, my associates quote subsection (a) of 10 USC § 8811, but they neither set out nor give weight to the other provisions. To better explain my views, I quote the entire section. It is as follows:

"(a) A discharge certificate shall be given to each lawfully inducted or enlisted member of the Air Force upon his discharge.

"(b) No enlisted member of the Air Force may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary of the Air Force;

(2) by sentence of a general or special court-martial; or

(3) as otherwise provided by law." [70A Stat 544.]

This accused was to be separated before his term of enlistment expired. Accordingly, the provision of subsection (b)(1) applies and when that form of termination is involved, the Secretary of the Air Force is authorized to prescribe the conditions for separation. With that Congressional grant of power, the regulations promulgated by him have the force and effect of law, and they are binding on the parties to the contract. Therefore, the status of the accused would be governed by the Air Force Regulations in effect at the time termination processes were being completed.

Acting pursuant to the authority vested in him by Congress, as hereinabove quoted, the Secretary set 12:00 o'clock midnight as the effective time when orders of separation would take effect. Experience has shown that that provision is reasonable, necessary, and not in conflict with any law. Accordingly, legal precedents which are based on the Army procedure of considering the effective time of separation upon the delivery of the discharge when Army Regulations were silent as to a specific hour are inapposite, and I find no legal authorities which hold that regulations authorized by Congress to augment a statute can be ignored.

An argument is made by my brothers that if the Air Force can extend the time of discharge until midnight of the effective date, it could increase accused's term of service for a few days, weeks, or years. That reasoning misses the point entirely. The Air Force was not extending this accused's term of enlistment for, when the terms of the contract of enlistment are taken in consideration, the action being taken was to shorten his period of service. Under his voluntary agreement, the Air Force could have required him to serve until at least September 3, 1962, and so it is erroneous to suggest that grave constitutional questions might be raised unless the effective time is fixed at the moment a certificate is handed the accused. The effective date could have been later, and so providing for efficacy at a late hour on a fixed date is of no legal significance.

I think it might be helpful to the solution of this problem to give some consideration to the purposes of the statute. Paragraph (a) of 10 USC § 8811, supra, confers on the accused the right to be furnished with a discharge evidencing the nature of his service and it also saddles the Government with the duty of furnishing the document. The discharge reflects the type of service performance, and Congress has seen fit to compel the Air Force to furnish its servicemen with evidence of the nature of their service. This is a beneficial provision to protect those who serve truly and well. Many benefits and rights are conditioned upon the kind of discharge a serviceman obtains, and to protect the privileges flowing from certain types of discharge, the individual is furnished with written proof of his satisfactory service. But Congress has not said by way of legislation that delivery of a document showing that information fixes the time the relationship terminates. Moreover, it would be unwise for Congress to enact any such provision. Conditions may make it preferable to give the discharge to the serviceman prior to the effective time the relationship changes and, on the contrary, they may make it necessary to deliver the certificate at a subsequent time. Some flexibility must be left to those required to administer the law, and the Secretary of the Air Force was designated by Congress to provide for the details. Accordingly, it seems to me that the Court gives too much weight to the mere delivery of a document and not enough to the law. To illustrate that point, I mention two different situations which should be sufficient for that purpose. A serviceman's status may be changed by separation at the expiration of the term of his enlistment, and failure of the Government to furnish him a certificate would not extend the term. Again, orders from proper authority are essential to change the status prior to the termination of the period of enlistment and, if they are

649

not issued, a delivery of a discharge would be ineffective.

While in situations such as the one at hand there are a number of steps required by regulations which must be taken by both parties before the relationship ends, the one of critical importance is the document which fixes the time and place of the separation. It seems to me to be unsound and diffused reasoning to say that an order of separation can specify the day but not the time. This is the legal effect of the majority opinion. While it is true this discharge was delivered some few hours ahead of the time provided by regulations for the effective time of separation, that was done solely for the convenience of the parties; otherwise they would have had to be working out administrative details at midnight. Although delivery of the document was a convenient arrangement for all concerned, it did not work a change in the law.

That leaves for discussion the revocation of the orders of separation, but that offers no obstacle to jurisdiction. Under the regulation, accused was an airman until midnight and the orders of separation could be rescinded provided the rescission was accomplished prior to that time.

For the foregoing reasons, I would affirm the decision of the board of review.