UNITED STATES, Appellant

v

JOHN E. BROWN, Personnelman Third Class,
U. S. Navy, Appellee

12 USCMA 693, 91 CMR 279

No. 15,457

March 9, 1962

*Commander Lazar H. Benrubi,* USN, argued the cause for Appellant, United States. With him on the brief was *Lieutenant John W. Boult,* USNR.

*Fred W. Shields, Esquire,* argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel M. G. Truesdale,* USMC, and *Captain John P. Gibbons,* USN.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused pleaded guilty to charges of conspiracy, in violation of Uniform Code of Military Justice, Article 81, 10 USC § 881, and various offenses relating to the administration of service-wide competitive examinations, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, reduction, forfeiture of all pay and allowances, and confinement at hard labor for one year. The convening authority reduced the period of confinement adjudged to six months but otherwise approved the sentence. A Navy board of review set aside the proceedings below on the ground that the court-martial lacked jurisdiction to try the accused. The Acting The Judge Advocate General of the Navy has certi-fied the board's decision to this Court upon the following issue:

"Was the Board of Review correct in holding that the court-martial had no jurisdiction to try the accused?"

In order to resolve this controversy, it is necessary to refer briefly to the facts upon which the board rested its conclusion.

Accused enlisted in the Naval service on February 28, 1957, and agreed to serve on active duty for a term of four years and for two years thereafter in the Ready Reserve. On January 9, 1961, orders were validly issued terminating accused's active duty in the Regular Navy and transferring him to inactive duty in the Naval Reserve, effective "this date." On the same day, appropriate entries were made in ac-

693

cused's service record reflecting the termination of his active service in the Navy.

It is conceded that accused completed every formality attendant upon his relief from active duty, received the orders directing his separation, and departed from his ship, en route to his home in Ohio, at 9:00 a.m. on January 9. At 10:00 a.m., information was received indicating that accused had committed the offenses with which he was ultimately charged. The orders terminating his active duty were "cancelled" at 11:00 a.m. and instructions were issued for his apprehension "before 2400, 9 Jan 61." Accused was, in fact, taken into custody aboard a train at Barstow, California, at 4:30 p.m., by a Marine provost marshal and delivered to agents of the Office of Naval Intelligence. At 12:10 a.m., on January 10, 1961, he was confined at the Naval Station, Long Beach, California, "for safekeeping."

Accused was subsequently brought to trial and, after unsuccessfully contesting the jurisdiction of the court-martial, entered his pleas of guilty, as noted above.

In determining that no jurisdiction existed to try the accused, the board of review relied upon our decision in United States v Scott, 11 USCMA 646, 29 CMR 462. We turn, therefore, initially to a consideration of our holding in that opinion.

In the *Scott* case, a member of the Air Force was ordered discharged for unfitness. He completed necessary clearance procedures, and a general discharge certificate and copies of appropriate orders announcing his separation were delivered to him. Thereafter, while still on the base, he committed larceny. At 7:30 p.m. on the same day, revocation of his discharge was made known to him, and he was placed in confinement. We concluded that Scott had been effectively discharged from the Air Force by delivery to him of the discharge certificate and orders. Accordingly, we held that he was not in the service at the time the proceedings against him were commenced, and no jurisdiction existed to try him by court-martial. We expressly rejected the con-

tention that the effectiveness of his discharge was delayed by the provisions of an Air Force Regulation until midnight of the day on which it was delivered to him.

The Government seeks to distinguish our decision in *Scott* and points to the fact that it involved delivery of a general discharge certificate which terminated that accused's entire military obligation, whereas this case involves only a separation from active duty by receipt of competent orders which, under applicable Naval regulations, became effective at midnight on the date of their receipt. In short, the Government argues that accused was still in service when he was apprehended and confined.

We are unable to discern any material distinction between the situation now before us and that involved in United States v Scott, supra. True it is that Scott received a general discharge certificate, whereas this accused's active duty was ended by competent orders transferring him to the Naval Reserve; but, in both cases, the question to be resolved is the same, *i.e.*, whether the accused was "in" the armed forces at the time jurisdiction was asserted over him. Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955); Kinsella v United States, 361 US 234, 4 L ed 2d 268, 80 S Ct 297 (1960); McElroy v United States, 361 US 281, 4 L ed 2d 282, 80 S Ct 305 (1960); Grisham v Hagan, 361 US 278, 4 L ed 2d 279, 80 S Ct 310 (1960).

In the *Scott* case, it was determined that, under long standing service precedents, delivery of a discharge certificate operated to terminate the accused's status as a member of the Air Force despite the existence of a regulatory provision purporting to delay the effectiveness of that act until midnight. The only real difference here is that accused's status as a person on active duty was terminated by orders rather than a discharge certificate. But that was the only means by which he was entitled to have his active duty ended, for his reserve obligation continued and, until it was fulfilled, he was not authorized to be discharged from the Navy.

Jurisdiction to try accused, however, depended upon his continued service on active duty rather than upon lack of discharge and membership in the inactive reserve. Code, supra, Article 2, 10 USC § 802; United States v Wheeler, 10 USCMA 646, 28 CMR 212, my concurring opinion. Thus, when orders were delivered to him ending that status, jurisdiction over him was also terminated just as it was by delivery of the analogous discharge certificate in *Scott,* supra.

As noted above, the Government nevertheless argues that, as applicable regulations provide that such orders do not operate to effect accused's separation until midnight on the day of issuance, accused was still on active duty when apprehended and confined. This contention was expressly considered and rejected in United States v Scott, supra, with regard to a similar attempt to delay the effectiveness of delivering Scott's discharge to him. For the reasons there stated, we perceive no reasonable basis for permitting such an extension in the case of orders relieving an accused from active duty. Cf. Hironimus v Durant, 168 F2d 288 (CA 4th Cir) (1948). Compare United States v Robertson, 8 USCMA 421, 24 CMR 231.

Moreover, so to hold would mean that existence of jurisdiction to try an individual subject to the Uniform Code, designed to provide a single system of military justice, would depend upon the provisions of diverse departmental regulations and thus upon the armed force and component to which the particular accused belonged. "Jurisdiction to punish rarely, if ever, rests upon such illogical and fortuitous contingencies." Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949).

In sum, then, we hold that termination of a person's active duty status by delivery to him of competent orders effective on the day of such delivery, serves to end jurisdiction to try him by court-martial, just as if his entire service obligation had been completed by delivery of a valid discharge. United States v Scott, supra. Accordingly, the board of review did not err in concluding that the court-martial lacked jurisdiction to try the accused.

The certified question is answered in the affirmative, and the decision of the board of review is affirmed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

As the principal opinion points out, in United States v Scott, 11 USCMA 646, 29 CMR 462, we were dealing with "long standing service precedents" on the effect of delivery of a discharge certificate to the person to be discharged. These precedents were based on a settled construction of "a jurisdictional statute," now 10 USC § 8811, the provisions of which indicated that a discharge was effective on delivery. In the light of this background, we concluded that service regulations could not impose conditions to delay discharge beyond delivery of the certificate. No comparable situation is present here.

The Universal Military Training and Service Act, under which the accused enlisted, provides that "upon his release from active duty" he shall be "transferred to a reserve component." The means and the procedures by which the release and transfer are accomplished are not spelled out. 10 USC § 651(b). Instead, Congress gave the service secretaries specific authority to promulgate regulations "to carry out" the provisions of the Act. 10 USC § 280. All the services, not just the Navy, provide that an order releasing a person serving an enlistment under the Training and Service Act takes effect at midnight on the last day of active service. See Air Force Regulations 39–10, paragraph 15c; Army Regulations 635–200, paragraph 17a(2). Consequently, if there is any settled administrative construction of the Training and Service Act, it is clearly to the effect that regulations may specify the precise moment of release from active duty and transfer to the reserves. Nothing in the Act is inconsistent with, or contrary to, this construction. Nor is there any established practice that conflicts with these regulations. Contrary to the majority, therefore, I find very material differences between the facts in the *Scott* case and those present here. In my

opinion, those differences require a different conclusion. I would answer the certified question in the negative, and return the record of trial to the board of review for review of the case on the merits.