UNITED STATES, Appellee,

v

SAMUEL L. GRIFFIN, Private,
U. S. Army, Appellant

13 USCMA 213, 32 CMR 213

*First Lieutenant David M. Gill* argued the cause for Appellant, Accused.

*First Lieutenant Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

Two questions relating to the jurisdiction of the general court-martial which convicted the accused, on his plea of guilty to larceny and wrongful possession of heroin, are presented for our consideration. The first relates to the absence of a formal order withdrawing the charges from a court-martial to which they had been previously referred.

In United States v Emerson, 1 USCMA 43, 1 CMR 43, we held that the absence of a formal ▪ written order of reference does not deprive a properly constituted court-martial of jurisdiction to try the charges before it. We said that "an oral referral for trial" authorizes a court-martial to try the charges. Supra, page 45. In United States v Lord, 13 USCMA 78, 32 CMR 78, we held that in the absence of evidence to the contrary it will be presumed the convening authority has "a proper reason" to withdraw charges from a court-martial that had not yet convened to hear them, and to refer them to another court-martial. Since nothing in the record, or in the papers filed in this Court, contradicts the presumption of regularity, there is no foundation for this part of the accused's claim of lack of jurisdiction.

In the second part of his attack on the court-martial's jurisdiction, the accused contends he was not at the time of trial subject to military prosecution. The contention is based upon a claim that he was legally discharged from the service before court-martial proceedings were begun. A motion to dismiss on that ground was made at arraignment. After an extensive out-of-court hearing, the law officer denied the motion. That ruling is correct.

The accused was returned from Korea to the United States by ship for the purpose of separation from the Army with an undesirable discharge under the provisions of AR 635–208. The order directing discharge and other necessary papers were forwarded to the Army Personnel Center, Oakland, California, which in turn routed them to Transfer Station, the sub-unit of the Center which processed personnel for separation. The Station was authorized to complete the records for discharge in advance of the arrival of persons transferred to it for discharge so that separation could be accomplished within twenty-four hours of actual arrival. Sometime between July 27, 1961, and August 9 or 10, a formal discharge certificate was prepared for the accused. It was dated August 11, in anticipation of compliance with the directive to accomplish discharge within twenty-four hours of arrival. On the afternoon of August 10, the accused's ship docked at San Francisco. The accused was arrested and placed in confinement at the Presidio in San Francisco, on sworn charges alleging the commission of the offenses on which he was later brought to trial. On the same afternoon, the commanding officer of Transfer Station was informed that the accused had been taken off the ship. The next morning, he was advised the accused would not be present for processing for discharge. Accordingly, the accused's name was stricken from the Processing Roster. On August 16, the order providing for accused's discharge was officially revoked. Later, the morning report records of Transfer Station were corrected to reduce by one the total number of

persons picked up on its rolls as assigned to the unit for processing for discharge. At no time did the accused complete the normal discharge proceedings, which included, among other things, personal review of his records for the purpose of correcting errors or omissions; affixing his signature on required documents, such as the acknowledgment of notification of the right to later review of the undesirable discharge; and the receipt of final pay. Nor was the discharge certificate or notice of its preparation given to the accused. On August 14, he was interviewed in the stockade by Major Mary Conrad, the Article 32 investigating officer. She had with her the accused's official personnel file which contained the discharge papers. During the interview, the accused told Major Conrad he had been sent "home" for a discharge; and he asked whether, in light of the charges, he would be discharged. She told him it was "out of . . . [her] jurisdiction."

Separation from the service by way of discharge requires issuance of competent orders directing the discharge and "delivery . . . of the discharge certificate or other valid notice" to the person discharged of the termination of his military status. United States v Scott, 11 USCMA 646, 647, 29 CMR 462; United States v Brown, 12 USCMA 693, 31 CMR 279. There is ample evidence to support the law officer's ruling that no notice of discharge either actual or constructive was given so as to terminate accused's military status.

As to actual notice of discharge, we can assume, without deciding, that "a certificate [of discharge], when issued pursuant to lawful order, creates a presumption that the notice required for discharge was given (IV Bull JAG, 1945, Sec 466(1), p 283)." United States v Santiago, 1 CMR 365, 369. However, it is crystal clear that neither the accused, nor anyone acting in his behalf, received the discharge certificate itself or notification thereof. United States v Scott, supra; United States v Santiago, supra.

The contention of constructive notice equally lacks merit. It is predicated on a misconception of the regulation dealing with discharge procedures. Paragraph 17, AR 635–200, April 8, 1959, provides that a discharge is "effective at the time of notice to the enlisted person of discharge." It further provides that notice may be "actual" or "constructive." The provision on constructive delivery of a discharge reads as follows:

"(b) Constructive, when actual delivery of the discharge certificate cannot be accomplished owing to the absence of the individual to be discharged. For example, such a situation would arise if the individual were on leave or in the hands of civil authorities. Receipt by the individual's organization at his proper station of the order directing his discharge will be deemed sufficient notice. Except when the individual was on leave when discharged, the date of receipt of the order and the reason why actual notice thereof was not given will be entered, by indorsement, on the back of the discharge certificate."

The accused contends that his confinement in the stockade at the Presidio constituted an "absence" within the meaning of the quoted provision. Support for the argument is sought in paragraph 28b, AR 335–60, which, in part, provides that individuals "in arrest or confinement" are absent for the purpose of reporting the daily status of personnel of the command. Although there is persuasive authority to the contrary, we may assume, for the purpose of following appellant's argument, that one can be an absentee within the meaning of AR 635–200, although physically under actual control of the military authorities. Cf. United States v Milam, 22 CMR 862; JAGA 1956/6416, 6 Digest of Opinions, Courts-Martial § 49.2. We may also assume, for the purposes of this case, that qualified Personnel Center officials prepared the certificate of discharge and turned it over to Transfer Station. These assumptions, however, fall far short of overcoming the positive evidence of nondelivery.

Mere surrender of possession of an instrument does not establish delivery. The surrounding circum stances must show the physical transfer of the instrument was accompanied by an intention that the instrument take effect according to its legal tenure. See United States v Johnson, 6 USCMA 320, 20 CMR 36. For example, a deed handed to the grantee for the sole purpose of permitting him to read it to determine the sufficiency of the description of the land does not operate as a transfer of title. 16 Am Jur, Deeds, § 124. Here, the evidence compellingly shows that when the certificate came into the possession of Transfer Station, the accused's assigned unit, there was no intention that it operate then and there to terminate accused's military status. On the contrary, it irrefutably appears that the Station had possession of the certificate, only as one step, in a series of essential steps, in the discharge process. None of the other steps were taken. Indeed, Major Powers, the commanding officer of the Station, testified the command took affirmative measures to insure the accused's discharge would not take place as scheduled. On August 11, the date the accused was scheduled to be discharged, the Station officially struck his name from the Processing Roster; and a marker was placed in his file to show the presence of an impediment to discharge. We conclude, therefore, the law officer was correct in ruling there was no constructive delivery of the discharge certificate, or constructive notice of discharge to the accused.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.