UNITED STATES

v.

**Airman Basic Alan R. BARBEAU, FR 471–78–1843 United States Air Force.**

**ACM S24809.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 15 Aug. 1979.

Decided 9 April 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Captain Thomas S. Markewicz, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter.

Before EARLY, POWELL and MAHONEY, Appellate Military Judges.

### DECISION

MAHONEY, Judge:

Tried by special court-martial, military judge alone, the accused was convicted, in accordance with his pleas, of stealing a stereo turntable valued in excess of $100.00, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence extends to a bad conduct discharge, confinement at hard labor for thirty days, and forfeiture of $279.00 per month for two months. The sole issue before us is whether the court-martial properly exercised *in personam* jurisdiction over the accused. However, before addressing that issue, it is necessary to consider the impact of a defect in the trial procedure.

In conjunction with his motion to dismiss for lack of *in personam* jurisdiction, defense counsel recited a chronology of events, styled as an "offer of proof," concerning the accused's pending administrative discharge, scheduled for the same day that the court-martial charge was preferred against him. Likewise, trial counsel recited information concerning the pretrial events. The record leaves little doubt that counsel for both sides were in accord as to the chronology of events necessary to raise and resolve the jurisdictional issue. Moreover, it appears that the military judge accepted the information recited by counsel as a basis for his findings on the jurisdictional issue.

The statements of counsel indicate that on 18 July 1979 the accused received orders directing his separation from the Air Force, pursuant to Air Force Manual 39–12,[1] and on the same day the larceny of which the accused stands convicted was committed. On the morning of 20 July 1979, the accused was questioned by security police concerning the offense, and at 1530 hours that afternoon, prior to receipt of a discharge certificate, administrative processing of the separation was halted when the accused was apprehended for the offense and placed on "administrative hold." By 1700 hours on the 20th, the accused had been informed of sworn charges and restricted to the base by his commander.

---

1. Air Force Manual 39–12, Enlisted Personnel, Separation for Unsuitability; Misconduct; Personal Abuse of Drugs; Resignation or Request for Discharge for the Good of the Service; and Procedures for the Rehabilitation Program, dated 1 September 1966.

■ While acceptance of these statements of counsel as fact would greatly simplify our disposition of the jurisdictional issue, we are constrained to reject them for the following reasons: *First,* the recitations by counsel did not qualify as an "offer of proof," and even if they did, they could not be considered as proof of their contents, *United States v. Thompson,* 11 U.S.C.M.A. 252, 29 C.M.R. 68 (1960). The Manual for Courts-Martial, 1969 (Rev.), paragraph 154*c* precludes consideration of an offer of proof as a basis of the military judge's ruling. Specifically, it provides that an offer of proof is received only (1) from the defense, (2) after the court has ruled excluding testimony or evidence which was offered (3) on behalf of the accused. *United States v. Boney,* 45 C.M.R. 714 (A.F.C.M.R.1972). The sole purpose of an offer of proof is to preserve the issue by allowing reviewing authorities to assess the extent of prejudice to the accused in the event the trial judge's exclusionary ruling is later determined to have been erroneous.[2] Paragraph 57*g* of the Manual, *supra,* does not expand the permissible scope of an offer of proof, but merely cautions as to the circumstances of its presentation in court. *United States v. Richardson,* 21 U.S.C.M.A. 383, 45 C.M.R. 157 (1972).

■ *Second,* pretermitting counsel's characterization, their recitations fail to otherwise qualify as competent evidence since they amounted to neither testimony nor stipulation. Manual, *supra,* paragraph 138*d* and 154*b* (1). Counsel never indicated they were offering a stipulation of fact; the military judge never characterized their recitations as such; and most importantly, there is no affirmative showing that the accused desired to, or did, enter into a stipulation of fact concerning the events relating to the court's exercise of *in personam* jurisdiction over him. As stated in paragraph 154*b* (1), Manual, *supra,* a stipulation "should not be received in evidence if any doubt exists as to the accused's understanding of what is involved." While there is military precedent which sanctions receipt of stipulations without the accused's express understanding and consent, *United States v. Cambridge,* 3 U.S.C.M.A. 377, 12 C.M.R. 133 (1953), the better practice is to elicit on the record the accused's personal response indicating that he understands the stipulation and that he consents to its admission in evidence. *United States v. Carter,* 1 U.S.C.M.A. 108, 2 C.M.R. 14 (1952); *United States v. Herbert,* 13 C.M.R. 353 (A.B.R.1953). Failure to adhere to this practice diminishes the appearance of fairness of the accused's trial, and may result in post-trial attacks on adequacy of representation by defense counsel. *E. g., United States v. Field,* 27 C.M.R. 863 (N.B.R.1958).[3]

■ *Third,* even though consideration of uncontested and uncontroverted statements of fact by counsel has been sanctioned as a basis for ruling upon certain interlocutory matters,[4] clearly the better practice is for counsel to enter into a stipulation of fact with the accused's consent.

---

2. *United States v. Driggers,* 3 C.M.R.(AF) 513, 526–27 (1950). It is not difficult to find instances where appellate tribunals have obscured the meaning and scope of an "offer of proof." *E. g., United States v. Eull,* 34 C.M.R. 668, 671 (A.B.R.1964). An offer of proof should not be confused with foundation evidence as occurred in *United States v. Plaut,* 18 U.S.C.M.A. 265, 270, 39 C.M.R. 265, 270 (1969). Nor should an offer of proof be confused with the synopsis of expected testimony required by the Manual for Courts-Martial, 1969 (Rev.), paragraph 115*a,* as occurred in *United States v. Thomas,* 37 C.M.R. 519, 521–22 (A.B.R.1966).

3. Clearly the parties to the trial were aware of the correct procedure relating to a stipulation of fact: one exhibit consists of a written stipulation of the facts and circumstances surrounding the commission of the offense to which the accused plead guilty. Inquiry on the record established the accused's understanding of the stipulation and his consent to its admission in evidence.

4. Manual, *supra,* paragraph 137; *United States v. Burrow,* 16 U.S.C.M.A. 94, 98–99, 36 C.M.R. 250, 254–55 (1966) (witness availability; *United States v. Vanderpool,* 10 C.M.R. 664, 668 (A.F.B.R.1953) (individual defense counsel availability); *United States v. Dennis,* 4 C.M.R.(AF) 872, 894 (1950) (individual defense counsel availability); *United States v. Haley,* 3 C.M.R.(AF) 812, 818 (1950) (witness availability).

Manual, *supra*, paragraphs 44*g*(1) and 48*d*. Statements of counsel, even as officers of the court, if inadmissible hearsay, are incompetent as evidence and may not be considered by the court even in the absence of an objection. Manual, *supra*, paragraph 139 *a*. Such statements are particularly inappropriate as a basis for determining the fundamental issue of personal jurisdiction. Once that issue is raised, the government has the burden to establish by competent evidence that the trial court properly exercises *in personam* jurisdiction over the accused. *United States v. Russo*, 23 U.S.C. M.A. 511, 513, 50 C.M.R. 650, 652 (1975); *United States v. Graham*, 22 U.S.C.M.A. 75, 77, 46 C.M.R. 75, 77 (1972); *United States v. Buckingham*, A.C.M. 22575, 9 M.J. 514 (A.F. C.M.R. 17 March 1980).[5]

■ In view of the foregoing, we will disregard the statements of counsel and examine the record to determine whether the issue of *in personam* jurisdiction is raised, and if so, whether there is sufficient competent evidence in the record to satisfy the government's burden of proof, or whether a further evidentiary hearing may be appropriate. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

■ The evidence touching upon the jurisdictional issue consists of (1) a duly authenticated Request and Authorization for Separation (AF Form 100), dated 18 July 1979 authorizing the accused's separation from the Air Force effective 20 July 1979, pursuant to AFM 39–12, *supra* ; (2) the accused's written confession accomplished at 1005 hours on 20 July 1979; (3) the charge sheet (DD Form 458) which was properly sworn to and received for the officer exercising summary court-martial jurisdiction at 1700 hours on 20 July 1976;[6] and (4) the accused's demand, dated 3 August 1979, for immediate discharge based upon the authorization for separation.

The Request and Authorization for Separation is not itself sufficient to raise the issue of *in personam* jurisdiction because essential to termination of military "status," *United States v. Hout*, 19 U.S.C.M.A. 299, 301, 41 C.M.R. 299, 301 (1970); *United States v̅. Blanton*, 7 U.S.C.M.A. 664, 665, 23 C.M.R. 128, 129 (1957), is *notice* to the person whose status is to be terminated. *United States v. Leonard*, 19 U.S.C.M.A. 353, 41 C.M.R. 353 (1970).[7] However, we do find sufficient notice to the accused and consider the issue to be minimally raised because the accused's demand for discharge indicates that he received a copy of the separation authorization on 18 July 1979.

The primary defense contention is that the accused became a civilian at 0001 hours on 20 July 1979 because the separation authorization he possessed was a "self-executing" order. That contention is viable only if the order was in fact "self-executing." We find it was not. Despite the occasionally imprecise use of the term, "self-executing," it is customarily and properly reserved for those separation orders used to affect the release of reservists and national guardsmen from a period of temporary active duty without discharging them from their remaining military commitment in the reserve or national guard. *United States v. Hamm*, 36 C.M.R. 656, 658 (A.B.R.1966); *United States v. Mansbarger*, 20 C.M.R. 449,

---

5. That burden may be satisfied, *inter alia*, by a proper stipulation of fact. *United States v. Garcia*, 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954).

6. While a charge sheet is, of course, not evidence of the truth of the charges themselves, it is an integral and essential part of the "entire record" which we must consider in fulfilling our statutory role. *United States v. Koteen*, 1 C.M.R. 879, 882 (A.F.B.R.1951). Of particular concern here is page three of the charge sheet, which has been heretofore implicitly recognized as evidence of the events recorded thereon. The running of the statute of limitations, for example, is tolled by the hour and date

recorded for receipt of the charge sheet by the officer exercising summary court-martial jurisdiction over the accused. Manual, *supra*, paragraph 33*b* ; *United States v. Detion*, 13 C.M.R. 846, 848 (A.F.B.R.1953).

7. Also necessary to termination of military status is *delivery* of the discharge certificate, *United States v. Scott*, 11 U.S.C.M.A. 646, 29 C.M.R. 462 (1960), or in the case of reservists or national guardsmen, valid notice of release from active duty. *United States v. Brown*, 12 U.S.C.M.A. 693, 31 C.M.R. 279 (1962).

452 (A.B.R.1955). Such orders are "self-executing" in the sense that they need no further action on the part of the government (such as the issuance of a discharge certificate) to effect the release of the service member from active federal service. *United States v. Hudson*, 5 M.J. 413 (C.M.A. 1978); *United States v. Peel*, 4 M.J. 28 (C.M.A.1977); *United States v. Brown*, 12 U.S.C.M.A. 693, 31 C.M.R. 279 (1962). In this case, the charge sheet clearly indicates that the accused entered the regular enlisted force for a period of four years; his separation order clearly states that he was to be discharged (as opposed to "released from active duty"); and the separation authorization specified that a particular type of discharge certificate *was to be issued* to the accused. Thus, by its own terms, the accused's discharge order was not "self-executing." It required further government action and therefore did not automatically terminate his military status on 0001 hours or any other time on 20 July 1979.

With regard to regular enlisted members, even when the specified period of enlistment is successfully completed, the serviceman is not thereby automatically discharged, *United States v. Hout, supra; United States v. Dickenson*, 6 U.S.C.M.A. 438, 20 C.M.R. 154 (1955); *United States v. Klunk*, 3 U.S.C.M.A. 92, 11 C.M.R. 92 (1953). Article 2(1) of the Uniform Code of Military Justice, 10 U.S.C. § 802(1) supports this conclusion by making persons "awaiting discharge after the expiration of their terms of enlistment" subject to trial by court-martial. *United States v. Entrekin*, 42 C.M.R. 530 (A.C.M.R.1970). The accused, of course, had not successfully completed his term of enlistment. The discharge of the accused for cause upon completion of the separation action under AFM 39–12, like the discharge of an airman who has successfully completed his term of service, was dependent upon the completion of administrative processing, including *inter alia*, the issuance of a discharge certificate. Be-

cause of the aforementioned procedural defect, however, we have no evidence of the extent to which the accused's separation processing was complete. While we could resolve this evidentiary deficiency by ordering a *DuBay* hearing, we find it unnecessary to do so because we are satisfied that the earliest time the accused could have become a civilian was at 2400 hours on 20 July 1979.

Our authority for that conclusion is the same regulation that authorized the accused's discharge: AFM 39–12. Paragraph 1–13c of that regulation specifies that the effective time of discharge is 2400 hours on the effective date of discharge. The rationale for the 2400 time established in the regulation is of little concern to us, for we find it to be a permissible exercise of delegated authority which is neither burdensome nor unreasonable.[8] We are also convinced that specifying the end of the day as the time of discharge does not extend the term of any member's service because the day of discharge is a day of duty, for which the member receives full pay. *United States v. Milam*, 22 C.M.R. 862, 867 (A.F.B. R.1956). Moreover, in cases like the accused's the term of service is actually shortened by the early date of discharge. Finally, absent statutory impediment, it is illogical to say that the discharge authority may specify the date of separation, but not its hour. *United States v. Scott*, 11 U.S.C.M.A. 646, 650, 29 C.M.R. 462, 466 (1960) (Latimer, J., dissenting).

In arriving at this conclusion we are not unmindful of the majority decision in *United States v. Scott, supra*. In fact, for purposes of our decision we consider the relevant facts to be virtually identical. The accused in *Scott* was scheduled for early discharge under a predecessor regulation to AFM 39–12, which likewise set the effective time of discharge at 2400 hours. He had been fully processed for discharge, had received his discharge certificate, and had

---

8. "No regular enlisted member of an armed force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court-martial; or (3) as otherwise provided by law." 10 U.S.C. § 1169 (1968).

signed out of his unit, before his offense was even discovered. Although he was apprehended, confined and charged prior to 2400 hours on the discharge date, the Court of Military Appeals ruled that court-martial jurisdiction did not attach because the accused became a civilian at the time he was handed his discharge certificate. The basis of the decision in *Scott* was the majority's view that Title 10, United States Code, Section 8811(a) terminated military status upon delivery of the discharge certificate, notwithstanding the time set by the regulation. As noted by the Court of Military Appeals in its opinion, this result could be altered only by Congress, *Scott, supra* at 464. As aptly pointed out by appellate government counsel, Congress later did so, by repeal of the conflicting statute.[9] Thus, it is our conclusion that *United States v. Scott* having been overtaken by events, no longer precludes the military services from setting the effective hour of discharge on the discharge date, and that in the case before us, the accused could not have lost his military status prior to 2400 hours on 20 July 1979.

Having arrived at that conclusion, we must determine (assuming the accused actually was discharged at 2400 hours) whether prior to that time sufficient action with a view toward trial was taken to attach personal jurisdiction over him for the offense of which he stands convicted. *United States v. Hutchins*, 4 M.J. 190 (C.M.A.1978). What is required is a clear expression by the service to the member that it intends to hold him for trial on a matter being investigated.[10] The charge sheet in this case satisfies that requirement. After the charge and its specification were properly sworn to, the commander informed the accused of them, Manual, *supra*, paragraph 32*f*(1), and filed the charge sheet with the officer exercising summary court-martial jurisdiction. As a result, by 1700 hours on 20 July 1979, court-martial jurisdiction had attached to try the accused for the offense of which he stands convicted. Manual, *supra*, paragraph 11*d*; *United States v. Smith, supra*.[11]

Normally, the appropriate standard of review of the trial judge's ruling on an interlocutory matter is for "abuse of discretion," *United States v. Buckingham, supra*. In this case, however, due to the apparent reliance by the military judge upon the "offers of proof" recited by counsel, we have independently weighed the competent and material evidence bearing upon the issue. Having done so, we find that the court-martial properly exercised *in personam* jurisdiction over the accused. The findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and POWELL, Judge, concur.

---

9. "(a) A discharge certificate shall be given to each lawfully inducted or enlisted member of the Air Force upon his discharge. (b) No enlisted member of the Air Force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary of the Air Force; (2) by sentence of a general or special court-martial; or (3) as otherwise provided by law." 10 U.S.C. § 8811 (1956).

The foregoing statute was repealed by Pub.L. 90–235, section 3(a)(2), (b)(1), Jan. 2, 1968, 81 Stat. 757, 758. The same legislation replaced it with a similar provision, applicable to all armed forces, without the provisions discussed in *Scott, supra*, pertaining to delivery of the discharge certificate. See footnote 8, *supra*.

10. In this regard, the accused's confession is of no value because even though it fixes the time of his inculpatory statement to the police, the receipt of such statement is not sufficient action with a view toward trial to attach jurisdiction. *United States v. Smith*, 4 M.J. 265 (C.M.A.1978).

11. In view of the foregoing, the accused's demand for discharge, dated 3 August 1979, was untimely and without legal consequence. Even if the accused had been in the status of having completed his term of service, awaiting discharge, *United States v. Johnson*, 6 U.S.C.M.A. 320, 20 C.M.R. 36 (1955), the demand would have no effect upon the court-martial jurisdiction which had already attached. *United States v. Hout, supra*.