**UNITED STATES, Appellee,**

v.

**Private E–1 Arthur R. THOMPSON, 527–89–9138, United States Army, Appellant.**

**CM 447125.**

U.S. Army Court of Military Review.

10 Feb. 1986.

---

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Jerry W. Peace, JAGC, Captain Richard J. Anderson, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Erik M. Stumpfel, JAGC (on brief).

Before YAWN, WILLIAMS, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

WILLIAMS, Judge:

On 12 December 1984, appellant's uncharacterized separation under Chapter 11,

Army Regulation 635–200, *Personnel Separations-Enlisted Personnel*, 5 July 1984 [hereinafter cited as AR 635–200], was approved because of his unsatisfactory performance and conduct while in entry level status.[1] On the same day, appellant was interviewed by an agent from the Criminal Investigation Division (CID) and denied under oath any involvement in thefts of fellow soldiers' money orders several days earlier.

On 14 December 1984, the separation date directed by his discharge orders,[2] appellant began clearing post. According to stipulated facts, he first went to a building where he received his discharge papers, including a DD Form 214 (Certificate of Release or Discharge from Active Duty).[3] He then went to the finance building where he turned in his military identification card and received his final pay. Next, he went to the scheduled airline ticket office where he purchased a plane ticket and then proceeded to the post bus station where he bought a bus ticket. He took a cab back to his unit to pick up his luggage. Approaching the supply room, he was confronted by a sergeant and was told the company commander wanted to see him. The company commander told appellant he was wanted for questioning by the CID. Appellant was placed in a military vehicle and driven to the CID office where he was detained and questioned; he then confessed to larceny and other offenses. The same day, his company commander restricted him to the company area, initiated a DD Form 268 (Suspension of Favorable Personnel Actions), and confiscated his discharge papers, including the DD Form 214. On 19 December 1984, appellant made a formal demand for immediate release from the

---

**1.** Paragraph 11–5 of this chapter requires "[s]eparation will be accomplished within 3 duty days following approval by the separation authority."

**2.** These orders contained the following provision: "You are assigned to the U.S. Army separation transfer point ... for separation processing. After processing, you are discharged...."

**3.** Paragraph 3–2, AR 635–200, provides: "Discharge certificates are furnished all enlisted personnel when they are discharged except personnel separated from entry level status. The latter are issued a DD Form 214 (Certificate of Release or Discharge from Active Duty)."

Army, and his discharge orders were revoked. Charges were preferred on 21 December 1984.

On 5 March 1985, appellant was tried by a military judge sitting as a general court-martial. Pursuant to his pleas, he was found guilty of the larcenies and other offenses to which he had earlier confessed. He was sentenced to a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. Under the terms of a pretrial agreement, and in extending clemency, the convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for six months, and forfeiture of all pay and allowances.

On appeal, as at trial, appellant argues the military lacked *in personam* jurisdiction to try him. We agree.

The Court of Military Appeals was recently asked to identify the moment of discharge and decided "[d]ischarge is effective upon delivery of the discharge certificate." *United States v. Howard,* 20 M.J. 353, 354 (C.M.A.1985), *citing, United States v. Scott,* 11 C.M.A. 646, 29 C.M.R. 462 (1960). The court went on to say, "[t]his decision is based on a long line of historical service precedents which construed the provisions of the existing congressional statutes as separating a member of the armed services upon delivery to him of the discharge certificate *or other valid notice of the termination of his status.*" *United States v. Howard,* 20 M.J. at 354 (emphasis added). Since persons being separated from entry level status under Chapter 11, AR 635–200, do not receive a discharge certificate, we hold, in such cases, a DD Form 214 is "valid notice" of the termination of his status.[4] Thus, appellant was released from active duty and court-martial jurisdiction over him terminated. Although he was present on the military reservation and had to return to his unit to

pick up his luggage before physically departing, the subsequent well-intentioned efforts to retain military jurisdiction over him were futile. Since delivery of the discharge certificate (DD Form 214 in this case) had not been accomplished by fraud, *Wickham v. Hall,* 12 M.J. 145 (C.M.A. 1981), and had not been delivered for the sole purpose of effecting a reenlistment, *United States v. Clardy,* 13 M.J. 308 (C.M.A.1982), appellant's ties to the military had been severed. He was a civilian. His offenses should have been referred to appropriate civilian authorities for prosecution.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge YAWN and Judge KENNETT concur.

---

**4.** 10 U.S.C. § 1168(a), the statutory provision which governs discharges, states:

> (a) A member of an armed force may not be discharged or released from active duty until his discharge certificate *or certificate of release from active duty,* respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

(Emphasis added.)