# UNITED STATES

v.

## Paul R. GUITARD, 043 48 6517, Lieutenant Junior Grade (0–2), U.S. Naval Reserve.

### NMCM 87 0188.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 15 Aug. 1986.

Decided 31 May 1989.

CDR J.A. Williams, JAGC, USN, Appellate Defense Counsel.

Maj. J.L. Powers, USMC, Appellate Defense Counsel.

Lt. S.A. Kitterman, Jr., JAGC, USNR, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

ALBERTSON, Judge:

Lieutenant Junior Grade Guitard was convicted by a general court-martial composed of members for wrongful use of marijuana, a violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. His sentence—dismissal—was approved by the convening authority. He assigns ten errors for review, seven pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Only the first error assigned merits full discussion.

I

Appellate defense counsel states the assigned error as follows:

THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING APPELLANT'S MOTION TO COMPEL THE GOVERNMENT TO MAKE DR. LICHTENWALNER AVAILABLE AS A DEFENSE WITNESS ON THE MERITS.

A urinalysis sweep of appellant's unit on 10 March 1986 led to appellant being charged with use of marijuana sometime during the preceding 30–day period. Prior to trial, the defense requested the payment of expert witness fees, pursuant to Rule for Courts–Martial (R.C.M.) 703, Manual for Courts–Martial (MCM), United States, 1984, to a Dr. Mark Lichtenwalner, the Assistant Director of National Medical Services, Inc., an independent drug-testing facility, to secure his appearance as a witness for the defense. At an Article 39(a), UCMJ session the defense counsel was asked by the military judge to focus on those aspects of Dr. Lichtenwalner's expected testimony that would substantially differ from the anticipated testimony of the Government's expert, Lieutenant Commander (LCDR) Streumpler, the Executive Officer of the Naval Drug Testing Laboratory in Great Lakes, with a view to refuting the prosecution's assertion that the Government's expert would serve as the "adequate substitute" mandated by R.C.M. 703(d), MCM, 1984.

In this regard the civilian defense counsel, although not succinctly, and with some prodding by the military judge, identified three areas in which she proffered that the defense expert's opinion was contrary to the Government expert's opinion: (1) The defense expert would testify that the nanogram levels were consistent with passive ingestion while the Government expert would opine that they were not (2) The defense expert would opine that a naive user could unknowingly ingest marijuana at the amount required to produce the nanogram levels revealed by the test results and experience no effects, while the Government expert believed that the naive user would knowingly experience adverse effects (3) The defense expert would testify that he questioned the accuracy of the testing procedures (because it failed to reveal the presence of codeine when the appellant had taken codeine during the time period in question, as we later discover during the trial on the merits), while the Government expert would stand by the accuracy of his

laboratory's testing procedures and results.[1] Particularly, she proffered:

> Well, your Honor, except that when I use the term "interpretation of the test results," the government witness in speaking with me on the telephone and in response to questions around the possibility of unknown and oral consumption, indicated that *he believed that it was not possible to orally consume THC in a quantity that would give the readings that—he says were Lieutenant Guitard's readings in this case—without the accused having experienced that subjective effects of the drug,* that is, that the accused would know that he was high, if he had consumed enough to give those levels of metabolites. *Our witness* would testify that that is not the case based on his understanding and interpretation of the test results, and that, in fact, *it's possible to have a far higher level of metabolites than those claimed by the government in this case for Lieutenant Guitard and not experience any subjective effects of the drug,* which means that someone, in this case Lieutenant Guitard, could consume it unknowingly and never experience the effects of the drug, never feel high, never realizing ... not ... just unknowingly in the sense he didn't know he was consuming it, but never realizing that at any point in time after that that he consumed it. And we would contend that that is an important issue in this defense. For this to be a violation of the UCMJ, it has to be wrongful use. If it's possible for Lieutenant Guitard to have unknowingly consumed it and have never realized he consumed it, that certainly would not be wrongful use.

Emphasis supplied. R. 15–16.

In response, the Government offered this conclusion: "The substitute would be that the defense counsel may cross-examine, may interview LCDR Streumpler and even call him as their own witness in this regard. He will be available during the entire period of the trial." R. 20.

 An accused has a right to compel production of any witnesses on the merits or on interlocutory questions whose testimony would be relevant and necessary to the matter at issue at trial. *United States v. Mow,* 22 M.J. 906 (N.M.C.M.R.1987). When a request is made for the employment of an expert to testify on the accused's behalf at trial pursuant to R.C.M. 703(d), the Government is permitted to produce an "adequate substitute" in place of the particular expert requested by the defense. Neither the rule nor the analysis define the term "adequate substitute." This court held in *United States v. Robinson,* 24 M.J. 649, 652 (N.M.C.M.R.1987) that:

> We believe that the Sixth Amendment right of an accused to have compulsory process for obtaining witnesses in his favor demands that an "adequate substitute" for a particular requested expert witness at trial not only possess similar professional qualifications as the requested witness, but also be willing to testify to the same conclusions and opinions. To find otherwise would be to effectively foreclose the accused from obtaining favorable expert testimony to counter government experts testifying against him at trial and would surely amount to a denial of the "raw materials integral to the building of an effective defense." *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53, 62 (1985). *See also Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).

The expert witness requested by the defense in *Robinson* would have testified that the level of THC metabolite in Robin-

---

1. As might be expected, since he was the executive officer of the laboratory.

son's urine could have been registered by the passive inhalation of marijuana smoke. In appellant's case the defense requested expert witness, purportedly, would have testified that the levels of THC metabolite in appellant's urine would not necessarily indicate that appellant, upon ingesting the drug in any form, would have subjectively experienced the effects of the drug; therefore, the inference of knowing use of marijuana need not and should not be drawn.

■ In the instant case, the assertions of Government counsel that LCDR Streumpler would be subject to interview, cross-examination, and to being called as the defense's own witness concerning the matters raised in defense counsel's offer of proof in no way established that his testimony would be an adequate substitute. Government's proffer is merely a proffer of availability. Such availability is not, in and of itself, an adequate substitute if LCDR Streumpler could not or would not "testify to the same conclusions and opinions" as the defense requested expert.

■ Although the defense must identify with particularity, albeit by offer of proof, the opinions and conclusions about which its requested witness would testify, so that it clearly establishes that the requested expert's opinions and conclusions are material and necessary, the Government bears the burden of demonstrating that its proffered expert is an adequate substitute. *See United States v. Van Horn*, 26 M.J. 434 (C.M.A.1988); *United States v. Barbeau*, 9 M.J. 569 (A.F.C.M.R.1980); *see also United States v. Means*, 24 M.J. 160 (C.M.A.1987).

On review, the Government argues that LCDR Streumpler's testimony contained the same information that the defense offer of proof indicated Dr. Lichtenwalner would have provided. Thus, since no further advantage or information could have been garnered by the defense through the testimony of Dr. Lichtenwalner, his presence and testimony was not required. Critical to this issue is that the prosecution's entire case was based upon the results of the urinalysis and the testimony of LCDR Streumpler explaining those results. We must review the testimony given at trial to determine whether LCDR Streumpler was, in fact, an adequate substitute for Dr. Lichtenwalner.

II

Appellant testified that on the weekend prior to his Monday urinalysis, he attended a party at the University of Connecticut where he consumed a number of home-baked cookies and brownies. He experienced no immediate side-effects from their consumption and noticed nothing unusual about those snacks. Leaving the party a short time later, he stopped at a hotel with his fiancee, because he felt dizzy and tired. This he attributed to having four or five beers that evening. He further testified that he took several Tylenol # 3 tablets for a headache the day before the urinalysis, and that he ate a portion of a bag of chocolate chip cookies, baked by his fiancee's sister, that might have been laced with marijuana. Appellant and his fiancee testified that the "spiking" of these cookies might have been done by the sister's boyfriend, whom they disliked and who harbored a grudge against them for not inviting him to their wedding. There was no evidence at trial that any of the cookies and brownies eaten by appellant were in fact laced with marijuana. Appellant denied any knowing use of marijuana, and tested negative for use of codeine, an ingredient of Tylenol #3.

The appellant maintained that his innocent ingestion of marijuana cookies and cakes on Friday night, or his innocent ingestion of cookies on Sunday, or perhaps the two compounding each other, are what caused his positive urinalysis for marijuana the following Monday. He further maintained that the nanogram level extant in his urine when tested (in excess of 200

nanograms on the RIA scale and (48.18 on the GC/MS scale) was consistent with a maximum amount appellant could have ingested by the means purported (cookies, cakes and the eating of baked foods), without having experienced the physiological or psychological effects associated with the use of marijuana, effects necessary to support a conclusion of wrongful and knowing ingestion of banned substances. *See United States v. Harper*, 22 M.J. 157, 163 (C.M.A.1986). Appellant's entire defense, therefore, was heavily reliant upon an expert's testimony supporting his assertions of innocent ingestion.

The Government's expert, LCDR Streumpler, (the "adequate substitute" for the defense's requested witness) conceded at trial that appellant's urinalysis did not demonstrate where the THC came from, whether from marijuana in herb form, hashish, or synthetic THC used as control substances in the testing procedures. Neither could he say when or how the THC had been ingested (other than within the previous six days), nor what degree of subjective effect appellant would have suffered as a result of his ingestion. He accepted as possible that appellant could have unknowingly consumed marijuana without experiencing a "high," or that even if some effects had been experienced, that they could have been mistaken for or veiled by symptoms of another type of intoxicant, *e.g.*, alcohol. Thus, the Government's expert did provide some testimony in support of appellant's theory of defense.

But, more particularly, and in response to questions concerning appellant's claim of innocent ingestion, LCDR Streumpler stated that for appellant to have tested at the level he did on Monday would have required ingestion of 40 milligrams (the equivalent of two "joints") some 66 hours earlier (Friday night). LCDR Streumpler opined that such an amount of THC in appellant's urine indicated the use of quantities of marijuana that would have produced a definite "high" feeling for an extended period, and that a first-time or naive user would have experienced dramatic effects, and not merely the fatigue appellant claimed that Friday night. LCDR Streumpler also testified that because oral ingestion of marijuana requires three times the milligram amount to achieve the same nanogram level as would be produced by inhaling (smoking) marijuana, appellant would have had to have eaten an astonishing amount of marijuana-laced food, a claim appellant did not make. Although he admitted that not every naive user of marijuana would necessarily have experienced this feeling, he was of the strong opinion, based upon his professional reading, that the user would not have had a pleasant experience. We conclude that by the tenor of his testimony, LCDR Streumpler, in fact, precluded the possibility of passive innocent ingestion of marijuana because of the high nanogram levels registered by appellant's urinalysis; a result completely at odds with the expected testimony of Dr. Lichtenwalner.

Finally, appellant wanted an expert to challenge the accuracy of the test results, particularly the failure of the laboratory to detect codeine. LCDR Streumpler testified that the test results failed to show the presence of codeine because it was "[a] false/negative, and as far as I'm concerned, there is no possibility of a misidentification of the sample." R. 312. No testimony of LCDR Streumpler lent support to the defense on this issue.

Given the substance of LCDR Streumpler's testimony, as well as its overall tenor, the use of that testimony by appellant's trial defense counsel in trying to frame and argue her theory of defense, to include the favorable scope of the proffered testimony of Dr. Lichtenwalner, we conclude that LCDR Streumpler's testimony was not an adequate substitute for Dr. Lichtenwalner's. The defense was thereby foreclosed from acquiring and using the "raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53, 62 (1985), cited in *United States v. Robinson*, 24 M.J. 649 (N.M.C.M.R.1987); *United States v. Van Horn*, 26 M.J. 434 (C.M.A. 1988).

## III

Accordingly, the findings of guilty and the sentence are set aside. A rehearing on findings and sentence may be ordered.[2]

Senior Judge RILEY and Judge MIELCZARSKI concur.

---

2. Because of the disposition made on this issue, we do not find it necessary to resolve the other assignments of error.