UNITED STATES, Appellee,

v.

Charles A. SMITH, Aviation Structural Mechanic (Hydraulic) Second Class, U. S. Navy, Appellant.

No. 32,834.
NCM 76–0220.

United States Court of Military Appeals.

March 20, 1978.

*Lieutenant Lawrence S. Smith*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Steven D. Moore*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial of making a false official statement, negligent destruction of Government property, unlawful entry, and four specifications of larceny, in violation of Articles 107, 108, 134, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 908, 934 and 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $100 pay per month for 3 months, and reduction to pay grade E3. The findings and sentence as adjudged were approved by the convening

authority and were affirmed by the United States Navy Court of Military Review, 1 M.J. 959 (1976). We granted review to determine whether the court-martial which tried the appellant possessed personal jurisdiction over him.[1] We conclude that it did not, and reverse.

On August 20, 1975, the appellant reported a burglary of his on-base residence and stated that Government-owned draperies and utility-owned telephones had been stolen. After investigation of the report, the law enforcement authorities came to suspect the appellant himself as the culprit in the reported misdeeds. After having been properly warned under Article 31(b) of the Code, 10 U.S.C. § 831(b), the appellant admitted the larcenies and consented to a search of his car-top carrier where he had advised the agents they would find the pilfered items. Because the investigators believed they would find additional stolen goods in the appellant's second automobile and in his household goods which had been packed and readied for shipment,[2] they also asked for and obtained the appellant's permission to search these areas. When the appellant expressed some concern as to what would happen to him in light of his anticipated release from active duty on August 22, the agents advised the appellant that they would report their findings to the base legal office, where his fate would be decided.

On that same date (August 20), charges were drafted alleging larceny by the appellant of the draperies and the telephones. However, these charges were not signed or sworn to—that is, preferred—until August 22, on which date the charges also were referred to a special court-martial. At no time was the appellant confined. Indeed, he was not even presented to a magistrate to determine whether any official physical restraint was necessary. The appellant's separation orders were not cancelled until August 27, the notice of which informed him that he had been placed in a "legal hold status." Further investigation resulted in the preferral of additional charges against the appellant, the withdrawal of the original charges from the special court-martial, and the referral of all charges to a general court-martial.

As mentioned earlier, the appellant had been scheduled to be released from active duty with the Navy on August 22. Self-executing[3] orders to that effect, published on July 16, with an effective date of August 22, stated:

> On the effective date of these orders your active duty in the Regular Navy is terminated and you will consider yourself transferred to the U. S. Naval Reserve concurrently with release to inactive duty.

In its opinion, the Court of Military Review assumed that the precise effective time of these orders was 12:01 a. m., August 22, 1975.[4] As is apparent from the foregoing discussion, the furthest the Government had proceeded toward the prosecution of the appellant as of that moment was the drafting of the original charges against him.

The jurisdiction of a statutory court of limited jurisdiction, such as a military court-martial, is a matter prescribed by the pertinent statute. In the case of the Uniform Code of Military Justice, the relevant provision is Article 2(1), 10 U.S.C. § 802(1), which provides in material part that the following persons are subject to the Code:

1. The appellant made a timely motion at trial for dismissal of the charges upon this ground. The trial judge denied the motion.

2. The appellant was scheduled to be released from active military duty on August 22, 1975, two days after these events occurred.

3. Such orders by their own terms automatically become effective on the specified effective date without any further action being required.

4. *Cf. United States v. Scott*, 11 U.S.C.M.A. 646, 29 C.M.R. 462 (1960) where the court held that delivery of a discharge certificate or other notice terminated jurisdiction. *Accord, United States v. Brown*, 12 U.S.C.M.A. 693, 31 C.M.R. 279 (1962). Of course, where the notice is in the form of orders which are self-executing on some future date, it is not effective until that time. *See* paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; . . .

By the very terms of this article, the mere expiration of a period of enlistment, alone, does not alter an individual's status under the Uniform Code. *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978); *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970). A discharge normally is necessary to do so. However, if jurisdiction has attached prior to discharge, it continues until termination of the prosecution. *United States v. Hutchins, supra.* The critical question, then, in any such case as this is whether jurisdiction attached prior to discharge—in this instance, prior to 12:01 a. m., August 22, 1975.

 It is not necessary for trial actually to have begun prior to the discharge date in order for jurisdiction to have attached. What is necessary, however, is that some affirmative action with a view toward trial must have been taken before that date. Paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), lists examples of such actions: apprehension, arrest, confinement, or filing of charges.[5] The Government correctly urges that this list is illustrative, not all-inclusive. But it appears to this Court that whatever action is relied upon as having been adequate to invoke the military's jurisdiction over the person before his military status dissolves, the action must be such as to form a definitive point in time. It must be such that one can say that at some precise moment the sovereign had authoritatively signaled its intent to impose its legal processes upon the individual. For that to be the case, that action, whatever it is, must have been *official.* Merely writing down proposed charges is not such a manifestation by the Government. Therefore, as of 12:01 a. m., August 22, 1975, court-martial jurisdiction

over the person of the appellant had terminated.

The decision of the United States Navy Court of Military Review is reversed. The findings and sentence are set aside. The charges are dismissed.

Judge COOK concurs.

FLETCHER, Chief Judge (concurring in the result):

Our sole question for consideration here is definition of the phrase "commencement of action" as set forth in paragraph 11(d), Manual for Courts-Martial, United States, 1969 (Revised edition). I agree with the majority that "apprehension, arrest and confinement," [1] fall within a proper definition of the phrase. In each of the three governmental processes the subject is put on notice that he is suspected of a violation of the law; in each process an overt action is taken against which—if improperly imposed—there remains legal remedy. With this rationale in mind, I would not include as "commencement of action" simple filing of charges without requiring service of process upon the subject which allows him legal recourse. Thus I would generally define "commencement of action" as the taking of action which concurrently allows the subject sufficient notice to give rise to legal remedy in the event of a wrong committed in the process of justice. I read "with a view toward trial" as words subject to limitation. The trial occurs at the far end of the judicial process where full legal protection is abundant. To suggest that "a view toward trial" would allow an early action both unnoticed by the subject and outside the scope of judicial review belies the concept of individual protection provided by the Uniform Code of Military Justice. Here the writing down of proposed charges did not constitute "commencement of action."

---

5. This court has had prior occasion to address the sufficiency of certain actions to invoke the trial forum's jurisdiction over the person. For instance, the Court in *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970), viewed the preferral of charges adequate for this purpose.

1. Paragraph 11(d), Manual for Courts-Martial, United States, 1969 (Revised edition).