UNITED STATES, Appellee,

v.

Private (E–1) Jerry R. SELF, SSN
238–88–9967, United States
Army, Appellant.

CM 437467.

U. S. Army Court of Military Review.

24 Aug. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major D. David Hostler, JAGC, and Captain Kevin E. O'Brien, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Robert D. Newberry, JAGC, and Captain Rexford T. Bragaw, III, JAGC, were on the pleadings for appellee.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

WATKINS, Judge:

The appellant was convicted of willfully and maliciously burning his automobile with the intent to defraud the insurer of the vehicle and of making a false statement under oath with respect to the incident.[1] He was sentenced by a military judge to a

---

1. The specifications were pleaded as violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976).

bad-conduct discharge. Our review is pursuant to Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (1976).

■ The evidence of record indicates that after trying unsuccessfully to sell or trade his privately-owned vehicle, Private Self contracted with another serviceman to set fire to the automobile, apparently as a part of a scheme to collect insurance proceeds. The plan was implemented on Halloween night, 1977, at Fort Belvoir, Virginia.

As he did at trial, the appellant asserts that the court-martial which tried him lacked *in personam* jurisdiction to do so. We agree instead with the ruling of the trial judge that Private Self was properly subject to court-martial jurisdiction.

After enlisting in the Army National Guard of the State of North Carolina, the appellant was routinely ordered into Federal service for an initial period of active duty for training (ADT).[2] He was directed to report to Fort Dix, New Jersey on 1 July 1977 for basic combat training (BCT) and then to Fort Belvoir, Virginia on 2 September for advanced individual training (AIT) in military occupational specialty (MOS) 52B30.[3] At the end of 24 weeks or upon completion of MOS training, the appellant was to return to the place he entered active duty and be relieved from such duty. That date was 18 November 1977. Other relevant facts, stipulated to by parties, appear as an Appendix to this opinion.

In the sense of paragraph 11d, Manual for Courts-Martial, United States, 1969 (Revised edition), we find sufficient evidence of "commencement of action with a view to trial" to permit the retention on active duty of Private Self, who otherwise would have reverted to State control on 18 November 1977 by virtue of the self-executing feature of his orders.

Although Private Self was originally thought to be a crime victim, military criminal investigators began to focus on him as a suspect during the period 11–14 November 1977. On 16 November, he was formally warned of his rights in accordance with Article 31, UCMJ, 10 U.S.C. § 831.[4] On 18 November, the day he was scheduled to "graduate" from AIT and return home, all favorable personnel actions pertaining to him were suspended.[5] Thereafter, Private Self remained at Fort Belvoir, although from time to time he was permitted to go back and forth to his home in North Carolina on leave or pass.

On these facts, we are satisfied that the filing of the Report for Suspension of Favorable Personnel Action (DA Form 268) constituted official governmental action, at a definitive point in time, and that it effectively signalled the intent of the sovereign to impose its legal processes upon Private Self. *See United States v. Smith*, 4 M.J. 265, 267 (C.M.A.1978) (Perry, J. with Cook, J., concurring). Moreover, it cannot seriously be argued, and the appellant has not even intimated as much, that the foregoing action was unnoticed by him or was outside the scope of judicial review. *See United States v. Smith, supra,* 4 M.J. at 267 (Fletcher, C. J.). There is nothing in the record to suggest that the appellant, any official of the Army National Guard, or anyone else conversant with the facts ever challenged or even questioned his retention on active duty. Jurisdiction having been retained by the commencement of action with a view to trial, it continued throughout the trial. Paragraph 11d, Manual for Courts-Martial, United States, 1969 (Revised edition); *see also* paragraph 2–5,

---

2. *See* 10 U.S.C. § 672(d) (1976).

3. Power Generator Equipment Operator/Mechanic.

4. When asked by the military judge at trial if the defense wished to contest the fact that Private Self was a suspect on that date, the response was in the negative.

5. See Army Regulation 600–31, Suspension of Favorable Personnel Actions for Military Personnel in National Security Cases and Other Investigations or Proceedings (21 February 1974).

Army Regulations 635–200, Enlisted Personnel (21 November 1977).[6]

▮ An alternative basis for our holding that Private Self was amenable to court-martial jurisdiction at the time of his trial in May and June 1978 is that his retention on active duty was properly authorized by State officials who, in *United States v. Peel*, 4 M.J. 28, 29 (C.M.A.1977), were said to possess the sole constitutional and statutory authority to extend the term of active duty of a national guardsman.[7] The *Peel* decision was handed down on 28 November 1977,[8] and it was received by Federal military authorities at Fort Belvoir on 8 December. Commencing on that date, and extending through 27 February 1978 when amendatory orders were published extending the period of appellant's active duty for training "from completion of MOS training until court-martial proceedings and/or punitive proceedings are completed," negotiations were in progress between Active Army and the National Guard officials concerning proper procedures for implementing the jurisdictional rule which was announced in *Peel*. As is clear from the attached stipulation of fact,[9] State National Guard authorities were initially of the view that the Army could validly extend Private Self's term of duty and that amendatory orders were not required.[10] Nevertheless, interim verbal authorization for the extension was given on 8 December 1977 and again on 15 February 1978,[11] prior to the time Private Self's ADT orders were formally amended on 27 February. Consequently, he remained subject to military criminal jurisdiction throughout the period in question.

6. Pertinently, this paragraph provides that "[a] member may be retained beyond the expiration of his term of service when an investigation of his conduct has been initiated with a view to trial by court-martial" and that such an individual "will not be discharged or released from active duty until final disposition of the court-martial charges."

7. The facts of *Peel* are clearly unique. He was convicted of offenses which were committed after the date prescribed for his release from active duty. Through administrative error, he was retained, and reassigned, without any legitimate purpose.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge LEWIS concur.

## APPENDIX

With the express consent of the accused, the parties to the trial stipulated that the following chronologically-arranged facts were true and material to the issue of *in personam* jurisdiction:

| | |
|---|---|
| November 1, 1977 | Alleged burning of Private Self's motor vehicle. |
| November 1, 1977 | Private Self is targeted as potential suspect by CID. |
| November 18, 1977 | Private Self has 'flagging' action pursuant to AR 635–200 initiated. Appellate Exhibit II. |
| November 18, 1977 | Private Self's end of term of service pursuant to his orders. |
| November 28, 1977 | The Court of Military Appeals announces *United States v. Peel*, 4 M.J. 28. |
| December 8, 1977 | *Peel* case received at Fort Belvoir SJA. |
| | CID and company commander are advised that they must get amending orders from State of North Carolina National Guard (NCNG). |
| | Fort Belvoir authorities call the Adjutant General, NCNG, enlisted section, and notify them that the Army is investigating Self with a view towards prosecution. The Army requests to keep Private Self on active duty. The NCNG says 'go ahead'. However, at this point in time the NCNG was not aware of *U. S. v. Peel* and the change in the law. They did not know that |

8. The effective date of the mandate implementing the opinion of the Court was 12 December 1977. *United States v. Peel*, 4 M.J. 28 (C.M.A. 1977); Rule 45, Rules of Practice and Procedure, Court of Military Appeals.

9. Appendix to this opinion.

10. See the discussion of the concept of implied authorization in *United States v. Hudson*, 5 M.J. 413, 416 (C.M.A.1978).

11. The instant charges were preferred on 16 February 1978.

they could withhold consent, because the NCNG was still under the impression that the old procedure, whereby the Army could extend National Guardsmen past ETS, was in effect. Since this date NCNG has consistently expressed its desire that the Army maintain jurisdiction over Private Self.

8 Dec–15 Feb 78 — Discussions between Fort Belvoir and NCNG authorities on how to implement the new rule. NCNG AG had to coordinate with the National Guard Bureau in Washington, D.C. on what stance the NG should take in light of the new CMA decision. The NCNG wanted the Army to maintain jurisdiction; but was confused as to the new procedure whereby the NG would have to issue the amending orders as opposed to the Army initiating 'flagging' action UP AR 635–200. The NCNG was notified that the Army could not prosecute unless and until official authorization pursuant to the new law was given by the NCNG. Private Self's case was the first case in which the NCNG was asked to follow the new procedure.

15 Feb 78 — NCNG's Adjutant General telephonically notifies Fort Belvoir, that North Carolina will issue amending orders as requested, and that the Army could prosecute.

16 Feb 78 — Charges preferred.

27 Feb 78 — Amending orders officially dated and signed by NCNG, Appellate Exhibit III.