**UNITED STATES, Appellee,**

v.

**Specialist Four Gregg A. BOWMAN, SSN 313–66–0307, United States Army, Appellant.**

**CM 438548.**

U. S. Army Court of Military Review.

17 April 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Allan T. Downen, JAGC, were on the pleadings for appellant.

Major David McNeill, Jr., JAGC, Major Douglas P. Franklin, JAGC, and Captain William J. Douglas, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

■ On 28 May 1978, the appellant and three other American soldiers robbed a German man of his billfold containing approximately $26.00 worth of German currency and coin. He was tried by a general court-martial and convicted of the offense on 2 May 1979, almost six months after his term of enlistment had expired.[1] Although he expressly declined to raise any jurisdictional issue at his trial, the appellant now contends that the court-martial lacked in personam jurisdiction because he had been illegally retained in active service after his enlistment term expired.[2] We conclude that the court had jurisdiction because the appellant consented to remain in active service.

The late evening robbery was reported immediately to the German police. They took the victim on a tour of the downtown area, where he soon recognized the automobile used by his assailants. The appellant and his companions were identified and arrested in a nearby bar. At about midnight on 28 May 1978 they were interrogated by the German police. During the period 0305 to 0430 hours, 29 May, the four were questioned by an American CID Special Agent.[3]

1. Appellant was convicted of robbery by means of force and violence in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922 (1976). His sentence, approved by the convening authority, includes a bad-conduct discharge, confinement at hard labor for one year, and forfeiture of all pay and allowances. Our appellate review is pursuant to Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976).

2. Lack of jurisdiction may not be waived. *United States v. Wheeler*, 10 U.S.C.M.A. 646, 649, 28 C.M.R. 212, 215 (1959); *United States v. Dickenson*, 6 U.S.C.M.A. 438, 448, 20 C.M.R. 154, 164 (1955).

3. No statements resulted from either interrogation.

The record does not disclose whether this was done while the appellant was still in German custody or whether he had been released to the American forces and was under some new restraint.[4]

The record is silent as to what may have transpired between 29 May and 3 November 1978, one day before appellant's three-year enlistment term was to expire.[5] On the latter date, according to a stipulated chronology admitted into evidence, a "[s]uspension of favorable personnel action [was] imposed on accused at request of German authorities."[6]

Army regulations prescribe that—

In all cases wherein it appears that final action on the civil [*i. e.,* civilian] charges will not be completed prior to the date of the accused's release from the service because of expiration of his term of service, . . . [e]fforts will be made to obtain the voluntary written consent of the accused for his retention in the service beyond the expiration of his term of service, until such time as final action on the civil charges and consequent administrative separation action has been completed. Before such consent is obtained, the member concerned will be advised that, since he is subject to the UCMJ, it is possible that court-martial charges may be preferred against him if the foreign government does not proceed with the case. However, preferral of court-martial charges will not be resorted to solely as a device to ensure his retention in the service. . . .

Army Regulation 635–200, *Personnel Separations: Enlisted Personnel,* par. 2–10 (1977). On 20 November 1978, the adjutant of the battalion to which appellant was assigned carried out the instructions quoted above. The appellant executed a request to be retained in the service beyond 4 November 1978, acknowledging that he had been told that court-martial charges could be preferred if the foreign government did not proceed with the case, and stating that the request was not because of any coercion, threats, or promises.

In the meantime, on 17 November 1978, German authorities had decided not to exercise criminal jurisdiction over the appellant. Notice of that decision reached American authorities (the Staff Judge Advocate, VII Corps, apparently the cognizant liaison office) on 28 November 1978.[7] On 18 December 1978, there were preferred the charges on which the appellant was later convicted.

---

**4.** United States policy is to attempt to secure the release of an accused to United States custody. Army Regulation 27–50, *Legal Services: Status of Forces Policies, Procedures, and Information,* par. 1–4a (1978); Army Regulation 27–10, *Legal Services: Military Justice,* par. 17–3a (1968; as added, 1975).

**5.** Appellant had enlisted in the Regular Army on 5 November 1975 for a period of three years. His term of service would, therefore, end on 4 November 1978.

**6.** Under regulations in effect at the time, a suspension of favorable personnel actions (sometimes called "flagging" action because the individual's personnel records are annotated, or "flagged") was not, in itself, authority to retain a person beyond expiration of a term of service, but was dependent upon the existence of other authority, which included provisions for retaining persons for trial by court-martial or for trial in foreign courts. Army Regulation 600–31, *Personnel—General: Suspension of Favorable Personnel Actions for Military Personnel in National Security Cases and Other Investigations or Proceedings,* par. 5a (3)

(1974); Army Regulation 635–200, *Personnel Separations: Enlisted Personnel,* pars. 2–5, 2–10 (1977). Current regulations are to the same effect. Army Regulation 600–31, *Personnel—General: Suspension of Favorable Personnel Actions for Military Personnel in National Security Cases and Other Investigations or Proceedings,* par. 6a (3) (1979); *cf.* Army Regulation 27–10, *Legal Services: Military Justice,* par. 17–3b (1968; as added, 1975).

**7.** This information comes from the stipulation of the parties to the trial, which reads in part as follows:

17 November 1978  Release of jurisdiction by [G]erman authorities.

* * * *

28 November 1978  VII Corps Office of the Staff Judge Advocate receives notification of the German release of jurisdiction.

In our view, the purported "release" could not be effective until communicated to United States authorities. See also note 11, *infra.*

Shortly before appellant's trial, his counsel served notice of intent to move for dismissal on the ground that the court-martial lacked in personam jurisdiction.[8] By the time the trial began, however, appellant had decided not to raise the jurisdictional issue. Nevertheless, the prosecution raised it, introducing the stipulated chronology mentioned earlier and several related documents including the appellant's request to be retained in the service. Asked for appellant's position on the matter, his counsel replied, after consultation, as follows:

> Your Honor, at this point in the proceedings, we don't plan on contesting the jurisdiction issue for the fact that we're under the impression that, if this tribunal should determine that there is no jurisdiction over the accused, the German authorities will apprehend him, place him in lengthy pretrial confinement, and then try him in a German court. It's the accused's position that he would much rather be tried in a military court with the protection of the American legal system rather than the German legal system.[9]

The prosecutor, too, believed that, if the court decided it lacked jurisdiction, German authorities would "reassume jurisdiction." Upon considering the evidence offered by the prosecution, "including the accused's request for extension," Judge Donahue ruled that the court had jurisdiction.

The trial judge's ruling was correct. Article 2(1) of the Uniform Code of Military Justice permits the exercise of court-martial jurisdiction over members of the Regular forces "awaiting discharge after expiration of their terms of enlistment."[10] As a consequence, the Court of Military Appeals "has long recognized that enlistment in an armed force establishes a status which does not terminate by the mere expiration of the term of enlistment." *United States v. Wheeley*, 6 M.J. 220, 222 (C.M.A.1979); *United States v. Hutchins*, 4 M.J. 190, 191 (C.M.A.1978). Indeed, "[a] person subject to the Code continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the Government [citing cases]." *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978); *United States v. Hout*, 19 U.S.C. M.A. 299, 301, 41 C.M.R. 299, 301 (1970).

By affidavit filed with this Court, the appellant asserts that:

> Between 4 November and 20 November 1978, I protested my retention on active duty to several people. . . . I asked Major Linebarger, Chief Military Justice, VII Corps, and SFC Cook, my platoon sergeant, why I was being kept in Germany. I did this on several occasions immediately following my ETS. I told them that I wanted to go home because I felt that I wasn't in the Army. . . .

He contends that his subsequent request to be retained was involuntary in the light of his protests and the earlier release of jurisdiction by German authorities.[11]

---

**8.** Rule 34, Uniform Rules of Practice Before Army Courts-Martial, *in* Department of the Army Pamphlet 27–9, *Military Judges' Guide*, App. H. (1969; as added, 1973).

**9.** *Cf. United States v. Munt*, 3 M.J. 1082, 1085 (A.C.M.R.1977), *pet. denied*, 4 M.J. 198 (C.M.A. 1978).

**10.** 10 U.S.C. § 802(1) (1976). Appellant, in his brief, argues that action with a view to prosecution must be commenced before the member's term of service expires. Citing the same authority—*United States v. Smith*, 4 M.J. 265 (C.M.A.1978)—the Government argues that the actions taken before 4 November were sufficient for that purpose. *Smith*, however, deals with the problem of the sufficiency of action to vest jurisdiction before self-executing orders operate to release a member from active service. Neither Article 2(1) nor paragraph 11*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition), impose any similar requirement in regards to the mere expiration of an agreed term of service. To the extent that Army regulations might seem to suggest otherwise (see, *e. g.*, Army Regulation 635–200, *supra*, par. 2–5), it appears that they would not operate to defeat jurisdiction conferred by statute. *See United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A.1978); *United States v. Torres*, 3 M.J. 659 (A.C.M.R.1977) (en banc), *aff'd*, 5 M.J. 86 (C.M.A.1978) (No. 34,378) (mem.).

**11.** If appellant and United States authorities had received notice that German authorities did not wish to exercise their jurisdiction, appellant

Our conclusion that jurisdiction existed is based on the following reasons: First, the flagging action was a sufficient legal basis for retaining appellant in active service at least for such period as was reasonable to permit compliance with the regulations governing retention of persons subject to foreign criminal jurisdiction. Second, his "protests" were made before his informed request to be retained beyond 4 November 1978, at which time the German release of jurisdiction had not been effectively communicated to military authorities. Moreover, the Government took appropriate action (carried out the provisions of Army Regulation 635–200, *supra*) within a reasonable time. Finally, the voluntariness of his request to be retained in active service is indicated by his position, as stated by his counsel, at the trial (quoted previously) and confirmed by his own words at the conclusion of the affidavit filed with this Court:

still could have been retained in active service, regardless of consent, and undoubtedly would have been retained, pursuant to the regulations cited in note 6, *supra*.

12. In the light of note 2, *supra*, we wish to make it clear that we do not hold that appellant

"[T]here's no way that I wanted to be tried in a German court." [12]

■ This is a case in which an accused effectively consented to be retained in active service. *Compare United States v. Wheeley*, 6 M.J. 220 (C.M.A.1979), *and United States v. Hutchins*, 4 M.J. 190 (C.M.A. 1978), *with United States v. Simpson*, 1 M.J. 608 (A.C.M.R.1975).

The findings of guilty and the sentence are affirmed.

Judge FOREMAN concurs.

Judge CLAUSE did not participate in this decision.

consented to the exercise of jurisdiction by the court-martial; only that he consented to be retained in a status that subjected him to jurisdiction. *Cf. United States v. Westfield*, 7 M.J. 936 (N.C.M.R.1979).