UNITED STATES, Appellee,

v.

Thomas T. MEADOWS, Private First
Class, U. S. Army, Appellant.

No. 37,510.
SPCM 13514.

U. S. Court of Military Appeals.

June 14, 1982.

For Appellant: *Captain John Lukjanowicz* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Lawrence D. Galehouse*, and *Captain Donald J. Perrault* (on brief); *Major Benjamin A. Sims, Captain Robert M. Twiss.*

For Appellee: *Major Douglas P. Franklin* (argued); *Colonel R. R. Boller, Major David McNeill, Jr., Major Ted B. Borek, Captain Gary F. Thorne, Captain William J. Douglas* (on brief); *Colonel Thomas H. Davis, Captain Landon P. Snell, III.*

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to his pleas of guilty, appellant was convicted of larceny by a military judge, sitting alone as a special court-martial at Fort Stewart, Georgia. *See* Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The sentence was to a bad-conduct discharge, confinement at hard labor for 3 months, partial forfeitures for a like period, and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement and forfeitures to one month each, but otherwise approved the findings and sentence. Subsequently, the United States Army Court of Military Review affirmed the findings and sentence, whereupon this Court granted review on this issue assigned by appellant:

WHETHER THE COURT WHICH TRIED THE APPELLANT HAD THE JURISDICTION TO DO SO IN VIEW OF THE FACT THAT THE GOVERNMENT TOOK NO ACTION WITH A VIEW TOWARDS TRIAL PRIOR TO APPELLANT'S ESTIMATED TERMINATION OF SERVICE DATE.

I

On June 5, 1975, appellant enlisted in the Army on a three-year enlistment. At 7:30 a. m., on June 1, 1978, appellant stole $360 from his roommate, Private Cockrell, who promptly reported the crime to the Criminal Investigations Division (hereinafter CID). Then, either later on June 1 or the next day, appellant returned $300 to his victim; and on June 2 Cockrell delivered the recovered funds to the CID. Later that same day, appellant executed a sworn confession to the larceny.

Appellant was tried on July 20, 1978, and after the findings of guilty had been rendered, the trial counsel read relevant sentencing information from the charge sheet. Thereupon, the military judge raised the question of *in personam* jurisdiction over appellant, since his enlistment apparently had expired several weeks before. In response, trial counsel offered into evidence as Appellate Exhibit III, a document dated June 30, 1978, wherein the officer then exercising general court-martial jurisdiction over Meadows authorized his retention for trial by court-martial pursuant to Army Regulation (AR)635–200. Also, the defense counsel represented to the trial judge that he had examined the data relating to jurisdiction and had "ascertained in fact" that "no jurisdiction issue" existed. Upon further inquiry by the trial judge, appellant affirmed that he had discussed with his lawyer "whether or not the Army had jurisdiction over" him and he was "satisfied with … [counsel's] advice" that jurisdiction existed. Accordingly, the judge did not pursue the jurisdictional question any further and proceeded to sentence appellant.

However, before the Court of Military Review, appellate defense counsel questioned the jurisdiction of the court-martial to try Meadows; in that connection he filed with that court a copy of orders issued at Fort Stewart, Georgia, on May 19, 1978, which contained these pertinent provisions:

3. MEADOWS, THOMAS T. 251–02–3996 PFC HHC 2d Bn 19th Inf (WAQDTO A) Ft Stewart, GA 31313

You will proceed on permanent change of station as indicated for the purpose of separation processing.

Assigned to: Southeastern US Army Garrison

Transfer Point (WOVANT 9), Fort Stewart, Georgia 31313

Reporting Date: 2 June 1978

Additional instructions: Not applicable

FOR ARMY USE

Auth: AR 635–10

HOR: Spartanburg, S. C.

P1 EAD or OAD: Ft. Jackson, S. C.

Eff date of separation: 2 Jun 78

MDC: 7BE8

Format: 430

Comp. RA

PEBD: NA

SPD: LBK

\* \* \* \* \* \*

5. MEADOWS, THOMAS T. 251–02–3996 PFC SE USAG Trf Pt (WOVANT 9) Ft Steward, GA 31313

You are relieved from active duty, not by reason of physical disability, transferred or returned to the Army National Guard/United States Army Reserve status and/or assigned as indicated on date immediately following release from active duty. Any temporary appointments held are terminated on your effective date of release.

Effective date (release from active duty): 2 June 1978

Assigned to: US Army Reserve Control Group (Reinforcement), US Army Reserve Components Personnel and Administration Center, St Louis, Missouri 63132

Component: Regular Army

Military Selection Service Act Obligation: Six years

Additional instructions: You are credited with 2 years, 11 months, 28 days active duty and for pay purposes. Mailing address is c/o Phillis Goins, Apartment 24, Spartanburg, South Carolina 29301. Effective date of Reserve assignment: 3 June 1978. You are not required to report physically to your assigned unit; however, you must keep them informed by mail of your address.

Appellant claims that these orders were "self-executing" and terminated his military status on June 2, 1978, before court-martial jurisdiction attached.

II

■ Pursuant to Article 2(1) of the Uniform Code of Military Justice, 10 U.S.C. § 802(1), we have recognized that jurisdiction persists even after the expiration of an enlistment while receipt of a discharge is awaited. On the other hand, we also have held that where "self-executing orders" have been issued which require no further steps to accomplish a servicemember's separation from active duty, his military status ends on the date prescribed by those orders. *See United States v. Hudson,* 5 M.J. 413 (C.M.A.1978); *United States v. Smith,* 4 M.J. 265 (C.M.A.1978).

Since Meadows was an enlistee in the regular Army, rather than a reservist or national guardsman who had been ordered to active duty, it seems less likely that the orders issued to him on May 19, 1978, were intended to accomplish the termination of his military status without further action, such as a physical examination and the delivery of a discharge certificate. Instead, the orders may only have been intended to provide a basis for that further action, which would return him to civilian status.[1] Under that interpretation his orders intended for Meadows to continue in military status at least until such action had been completed.

Indeed, it is difficult to imagine how these orders could be construed as "self-executing" in accomplishing Meadows' discharge from the regular Army or release from active duty in light of 10 U.S.C. § 1168, wherein Congress stated:

1. Since jurisdiction was not contested at trial and the orders were produced by the defense only after the case had reached the Court of Military Review, the record before us provides no information to aid us in deciding whether, in the interest of Army personnel practice, the orders were "self-executing."

Discharge or release from active duty: limitations

(a) A member of an armed force may not be discharged *or released from active duty* until his discharge certificate or *certificate of release from active duty*, respectively, *and his final pay* or a substantial part of that pay, *are ready for delivery to him* or his next of kin or legal representative.

(Emphasis added.) Under this provision it would seem that separation orders contemplate the completion of certain formalities before the separation takes effect.[2]

■ However, even if the orders are to be construed as "self-executing," we still conclude that the special court-martial had jurisdiction to try appellant for larceny. In that connection, we observe that, even if they were "self-executing," the orders of May 19 did not contemplate appellant's separation until the end of the day on June 2. Paragraph 2–13a(1) of AR 635–200 provides that "[d]ischarge by reason of expiration of term of service" "is effective at 2400 hours on the date of notice of discharge." Moreover, unless the orders intended that appellant not be released from active duty until the end of the day on June 2, there would be a hiatus in his military status between separation from active service on June 2, and the effective date of his reserve assignment on June 3; and this interruption would be at odds with an underlying purpose that, upon his leaving active service, Meadows would go immediately into the reserve forces.

Before midnight—2400 hours—on June 2, several noteworthy events had occurred.

According to the allied papers, the CID had taken two sworn statements from Meadows on June 1. In one, he had denied stealing any money from Cockrell; in the other, he had attempted to explain his possession of a small quantity of hashish which—apparently during a search—had been taken "from the left fatigue trouser cuff, tucked into the boot of Meadows" shortly after noon on June 1, 1978. Then, on June 2, appellant executed his sworn confession to the larceny from Cockrell. Obviously, as of June 2, 1978, "an investigation ... with a view to trial by court-martial" had been initiated within the meaning of paragraph 2–4 of AR 635–200, so the Army had a basis for retaining Meadows on active duty, if it chose to do so. *United States v. Self,* 13 M.J. 132 (C.M.A.1982).

■ Although in this case, unlike *Self,* no evidence was presented that any document extending appellant's term of service had been filed in appellant's personnel records before his scheduled date of release from active duty, the Government did offer in evidence as Appellate Exhibit III the document dated June 30, 1978, wherein the officer then exercising general court-martial jurisdiction over appellant authorized his retention for trial by court-martial.[3] Typically, a document executed after the scheduled expiration date of a term of service will not suffice to show that the term was validly extended. *United States v. Self, supra.* However, in light of appellant's pleas of guilty, the refusal of trial defense counsel to accept the military judge's invitation to contest the court-martial's *in personam* jurisdiction,[4] and the evidence that the CID investigation was al-

---

2. This statute brings into question the entire concept of "self-executing" orders for regular enlistees or reservists serving on active duty.

3. The approval of appellant's retention on active duty took place during the thirty-day period within which AR 635–200 requires that the officer exercising general court-martial jurisdiction take such action if charges have not been preferred. *See United States v. Self,* 13 M.J. 132 (C.M.A.1982).

4. Although an accused cannot create court-martial jurisdiction by consent, under some circumstances his actions may have the effect of

establishing or confirming court-martial jurisdiction. *Cf.* Article 4(a), Uniform Code of Military Justice, 10 U.S.C. § 804(a) (request for trial by a dismissed officer); *United States v. Wheeler,* 10 U.S.C.M.A. 646, 28 C.M.R. 212 (1959) (consent of a reservist to being ordered back to active duty); *United States v. Gallagher,* 7 U.S.C.M.A. 506, 22 C.M.R. 296 (1957) (reenlistment in an Armed Service). Moreover, we have recognized that an accused may stipulate to facts which establish that jurisdiction exists. *United States v. Garcia,* 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954). Likewise, the actions

most complete on June 2, we conclude that Appellate Exhibit III—fortified by the presumption of regularity—is adequate here to establish that appellant's original term of service had been validly extended before it expired. Thus, since appellant was properly retained in the Army until completion of his trial, as authorized by AR 635–200, he was subject to military jurisdiction at all times. *United States v. Self, supra; United States v. Pearson,* 13 M.J. 132 (C.M.A.1982).

### III

■ The actions which justified appellant's retention on active duty for "investigation . . . with a view to trial by court-martial" pursuant to AR 635–200 also were sufficient to satisfy the requirements of paragraph 11*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition); therefore his retention on active duty was authorized pursuant to the Manual for Courts-Martial—independent of AR 635–200 and other Army directives.[5] *United States v. Self, supra.*

### IV

Since the court-martial had jurisdiction to try appellant, the decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring):

I am certain that the orders here are not "self-executing" in terms of *United States v. Smith,* 4 M.J. 265 (C.M.A.1978).

FLETCHER, Judge (concurring in the result):

The majority opinion correctly concludes that the Government, at the trial level,

of Meadows and his counsel at trial eliminated the need for the Government to offer certain evidence that might otherwise have been necessary to establish that the court-martial had jurisdiction to try appellant.

**5.** The action taken was "such that one can say that at some precise moment the sovereign had

established court-martial jurisdiction over appellant. Article 2, Uniform Code of Military Justice, 10 U.S.C. § 802. Before the Court of Military Review, appellant for the first time attempted to challenge the Government's demonstration of jurisdiction by means of a copy of separation orders issued to him on May 19, 1978, with an effective date of June 2, 1978. I believe the Army Court of Military Review properly rejected this belated jurisdictional challenge.

Congress in enacting 10 U.S.C. § 1168 stated:

Discharge or release from active duty: limitations

(a) A member of an armed force may not be discharged *or released from active duty* until his discharge certificate or *certificate of release from active duty,* respectively, *and his final pay* or a substantial part of that pay, *are ready for delivery to him* or his next of kin or legal representative.

(Emphasis added.) Regardless of the effective date of these separation orders, appellant, a member of the Regular Army, introduced no evidence in view of this statute that he was released from active duty as a matter of law. In absence of such evidence, the Government's demonstration of jurisdiction remained uncontroverted. The court-martial had jurisdiction over appellant's person in accordance with Article 2. *See Garrett v. United States,* 625 F.2d 712, 713 (5th Cir. 1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981); *United States ex rel. Okerlund v. Laird,* 473 F.2d 1286, 1288 (7th Cir. 1973).

authoritatively signaled its intent to impose its legal processes upon the individual." *United States v. Smith,* 4 M.J. 265, 267 (C.M.A.1978). Of course, appellant was fully aware of the ongoing investigation, including his confession to larceny and the taking of hashish from his clothing by the CID.