UNITED STATES, Appellee,

v.

Shonnon D. WILSON, Airman Basic,
U.S. Air Force, Appellant.

No. 99–0120.
Crim.App. No. 32849.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 10, 1999.

Decided Aug. 25, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., SULLIVAN and GIERKE, JJ., and COX, S.J., joined. SULLIVAN, J., filed a concurring opinion.

For Appellant: *Captain Natasha V. Wrobel* (argued); *Colonel Jeanne M. Rueth, Colonel Douglas H. Kohrt, Lieutenant Colonel Ray T. Blank, Jr.,* and *Captain W. Craig Mullen* (on brief).

For Appellee: *Captain Peter J. Camp* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers,* and *Captain Martin J. Hindel* (on brief).

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of desertion and larceny of $320.00, in violation of Articles 85 and 121, Uniform Code of Military Justice, 10 USC §§ 885 and 921, respectively. He was sentenced to a dishonorable discharge and confinement for 10 months. The convening authority approved that portion of the sentence that provided for a dishonorable discharge and confinement for 7 months. The Court of Criminal Appeals affirmed in an unpublished opinion.

While awaiting trial, appellant filed a petition for extraordinary relief in the form of a writ of habeas corpus at the Court of Criminal Appeals. In that petition, appellant challenged the court-martial's jurisdiction over his person. The court denied appellant's writ in a published opinion. *Wilson v. Courter,* 46 MJ 745 (A.F.Ct.Crim.App.1997). Our Court denied appellant's writ-appeal of that decision "without prejudice to appellant's right to raise the issue asserted in the writ-appeal petition during the course of normal review." 47 MJ 80 (1997). In addition, appellant filed an unsuccessful petition for habeas corpus in the United States District Court for the Western District of Texas, challenging the jurisdiction of the court-martial. *Wilson v. Windall,* No. SA–97–CA–

0310, which was dismissed on September 23, 1997.

On appellant's petition, we granted review of the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT THE COURT-MARTIAL HAD IN PERSONAM JURISDICTION TO TRY APPELLANT WHERE HE HAD ALREADY BEEN GIVEN HIS DD FORM 214.

For the reasons set forth below, we affirm.

## I. JURISDICTION OVER MEMBERS OF THE NATIONAL GUARD

Members of the National Guard are subject to service under state and federal authority, which makes it important to identify which authority has jurisdiction over a member of the Guard at a particular point in time. As the Supreme Court has noted, "since 1933 all persons who have enlisted in a state National Guard unit have simultaneously enlisted in the National Guard of the United States.... [U]nder the 'dual enlistment' provisions of the statute that have been in effect since 1933, a member of the Guard who is ordered to active duty in the federal service is thereby relieved of his or her status in the state Guard for the entire period of federal service." *Perpich v. Department of Defense,* 496 U.S. 334, 345–46, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990) (citations omitted)(answering affirmatively the question of "whether the Congress may authorize the President to order members of the National Guard to active duty for purposes of training outside the United States during peacetime without either the consent of a State Governor or the declaration of a national emergency"). Members of the National Guard "must keep three hats in their closets—a civilian hat, a state militia hat, and an army hat—only one of which is worn at any particular time." *Id.* at 348, 110 S.Ct. 2418; *see* 10 USC §§ 12102, 12105–07, 12201, 12211, 12212, 12301, 12401, 12403, and 12405; 32 USC § 325.

■ There are a number of statutes providing for federal court-martial jurisdiction over members of the Guard. *See, e.g.,* Art. 2(a)(1), 10 USC § 802(a)(1) (jurisdiction over persons lawfully called or ordered to duty or training); *id.* at (a)(3) (jurisdiction over members of the Guard when on inactive-duty training in federal service); *see also id.* at (d) (authority to order a member of the Guard to active duty for purposes of military justice proceedings with respect to offenses committed while on active duty or while on inactive-duty training when in federal service). For purposes of federal court-martial jurisdiction, a member of the Guard must be in federal service at both the time of the offense and at the time of trial. *See* Rule for Courts–Martial (RCM) 201(b)(4) and (5), Manual for Courts–Martial, United States (1998 ed.); *see also* RCM 202(a)(5) (Discussion); RCM 204(a) (Discussion).

■ There are four main principles that apply to the question of whether federal court-martial jurisdiction over a member of the Guard has been terminated. First, if a member has completed a required period of federal service and been returned to state status, a court-martial will have jurisdiction only if the member has been ordered to active duty for purposes of court-martial proceedings under Article 2(d). *Cf. Willenbring v. Neurauter,* 48 MJ 152 (1998). Second, a discharge which terminates a person's military status as a member of a federal military component normally precludes the exercise of federal court-martial jurisdiction. *See* RCM 202(a)(Discussion at (2)(B)). A service-member's amenability to court-martial jurisdiction is not terminated by discharge, however, unless: (1) the member receives a valid discharge certificate or certificate of release from active duty; (2) there is a final accounting of pay such that the member's "final pay" or "a substantial part of that pay" is "ready for delivery" to the member; and (3) the member has completed any final clearing procedures required by service regulations. *See United States v. King,* 27 MJ 327, 329 (CMA 1989).

■ Third, if jurisdiction attaches "before the effective terminal date of self-executing orders, the person may be held for trial by court-martial beyond the effective terminal date." RCM 202(c)(1) (Discussion). "[S]er-

**330**

vicemembers may be retained past their scheduled time of separation, over protest, by action with a view to trial while they are still subject to the Code. Thus, if action with a view to trial is initiated before discharge or the effective terminal date of self-executing orders, a person may be retained beyond the date that the period of service would otherwise have expired or the terminal date of such orders." RCM 202(a)(Discussion at (2)(B)(i)); *see also United States v. Calley*, 46 CMR 1131, 1141–42, 1973 WL 14570 (ACMR), *affirmed*, 22 USCMA 534, 48 CMR 19 (1973). Actions with a view toward trial include "apprehension; imposition of restraint, such as restriction, arrest, or confinement; [ ] preferral of charges," and investigations highly likely to result in criminal charges against the member. RCM 202(c)(2); *see United States v. Self*, 13 MJ 132, 137–38 (CMA 1982); *see also United States v. Smith*, 4 MJ 265 (CMA 1978). When an obligated term of service has expired and the Government has failed to take steps within a reasonable time to bring that person to trial, jurisdiction may be terminated if the person objects to court-martial jurisdiction. *See* RCM 202 (Discussion); *United States v. Fitzpatrick*, 14 MJ 394 (CMA 1983); *United States v. Smith*, 4 MJ 265 (CMA 1978).

 Fourth, when a member of the Guard has been ordered to active federal service with the consent of the state, the period of service subject to court-martial jurisdiction includes any extensions of such service authorized under the Manual for Courts–Martial or other applicable rules and regulations, regardless of whether the state formally consents to the extension of a particular individual. *United States v. Self, supra* at 135. For example, when action has been taken with a view toward trial by court-martial of a member of the Guard during a period of training in federal status, such action will automatically extend the period of federal service beyond the termination date specified in any orders. *See United States v. Pearson*, 13 MJ 140, 141 (CMA 1982); *United States v. Hudson*, 5 MJ 413, 419 (CMA 1978).

## II. BACKGROUND

### A. *Actions taken by order of the Secretary of the Air Force*

Appellant enlisted in the California Air National Guard (ANG) for a period of 6 years on April 14, 1995, and was assigned to the 234th Combat Communications Squadron. On July 21, 1995, appellant's parent unit in the California National Guard ordered appellant to report for "Active Duty (Federal)" for 98 days of service "by order of the Secretary of the Air Force" under 10 USC § 672(d) (current version at 10 USC § 12301(d)). The orders covered the period from July 27, 1995, through November 1, 1995.

During this period of active federal military service, appellant engaged in the acts of misconduct that led to the charges in the present case. Appellant stole $320.00 from a fellow airman on October 18, 1995, and he departed from his unit without authority on October 19. He remained away from his unit, without authority, for over a year, until he was apprehended on November 30, 1996.

On October 21, 1995, two days after he began his absence, the California ANG changed appellant's duty status from "TDY school" to "absent without leave" (AWOL), effective October 19, 1995. At the time appellant began his unauthorized absence, he was 13 days short of completing the 98 days of federal service required by his active duty orders. His unauthorized absence suspended the termination date of his active duty orders, which had been scheduled to end on November 1, 1995. As a result, he remained on federal active duty during the period of his absence. *See United States v. Self, supra* at 132. On November 3, 1995, while he remained in federal status while absent without authority from his active duty unit of assignment, the California National Guard issued an order extending his active duty orders, "by order of the Secretary of the Air Force." The extension provided a new expiration date of December 31, 1995, an additional 60 days. As a result of the original order, as amended by the November 3 order, defendant's federal active duty obligation amounted to 158 days, of which he had

served 85 days. This left him with a balance of 73 days of federal active duty to be served following return from his unauthorized absence. *See Wilson,* 46 MJ at 748–49.

### B. *Actions taken by the State National Guard*

The California ANG changed appellant's status from "absent without leave" to "deserter" on November 20, 1995, and further changed his status on May 2, 1996, to "dropped from unit rolls," effective April 19, 1996. The state National Guard also issued various documents in May 1996 purporting to discharge appellant. The first was a special order stating that appellant was discharged from the California ANG "and as a Reserve of the Air Force," effective April 19, 1996, "by order of the Governor." The second was a Department of Defense (DD) Form 214 ("Certificate of Release or Discharge") listing Air Force Instruction (AFI) 36–2911 and AFI 36–3205 as authority for separation, which purported to separate appellant from the National Guard of the United States, effective October 18, 1995. The form described the type of separation as "release from active duty," with a "narrative" stating "deserter dropped from unit rolls." The character of service block reflected "under other than honorable conditions." The DD Form 214 was mailed to appellant's home of record. The third document was a National Guard Bureau (NGB) Form 22 (Report of Separation and Record of Service), effective April 19, 1996.

### C. *Subsequent proceedings*

Several months later, on November 30, 1996, appellant was apprehended by civilian authorities in San Antonio. He was then turned over to the Air Force, based upon the report of desertion, and he was placed in pretrial confinement at Lackland Air Force Base (AFB), Texas.

Shortly thereafter, the National Guard Liaison Noncommissioned Officer (NCO) at Lackland contacted the State National Guard, and was informed that appellant had been discharged. Based upon that information, the confinement officer at Lackland ordered appellant's release on December 2, 1996. Appellant was escorted off base by the National Guard Liaison NCO, who told appellant that he was now a civilian.

Upon further review, however, the legal office at Lackland concluded that appellant's discharge was not valid. The State National Guard agreed. On December 17, 1996, an order was issued, by order of the Governor, to "revok[e] totally" the earlier state action discharging appellant from the California ANG. The December 17 action was not accompanied by a conforming order correcting the previously issued NGB Form 22 reflecting appellant's discharge from the Air National Guard. That oversight was subsequently corrected prior to trial.

Appellant was apprehended on January 7, 1997, and he was returned to pretrial confinement at Lackland AFB. Two days later, charges alleging larceny and desertion were preferred against appellant. An Article 32, UCMJ, 10 USC § 832, investigation was held on January 10, 1997.

The California ANG then issued two additional orders, which purported to amend the initial active duty orders that had been issued "by order of the Secretary of the Air Force." The first, dated January 15, 1997, stated that it extended appellant's active service through March 30, 1997. The second, dated February 3, 1997, stated that it extended appellant's active service through May 31, 1997. Both the January 15 and February 3 orders were issued by order of the Governor; neither was issued by order of the Secretary of the Air Force.

Charges against appellant were referred to a general court-martial on February 12, 1997. Appellant contended that the court-martial did not have personal jurisdiction over him, a position that was rejected by the military judge and the Court of Criminal Appeals, as well as by the U.S. District Court that considered his application for a writ of habeas corpus.

### III. DISCUSSION

### A. *Appellant's period of active duty as specified in the actions issued by order of the Secretary of the Air Force*

Appellant was a member of both the California ANG and the National Guard of the

United States. The order to perform federal active duty that he received on July 21, 1995, placed him in exclusive federal status from the beginning of his active duty period on July 27, 1995, through the end of that period on November 1, 1995. There are several ways in which the terminal date of such an order may be modified. It may be terminated at an earlier period, for example, by federal authorities. *See* 10 USC § 12313(a). The period of federal service also may be extended by federal officials with the consent of state authorities under 10 USC § 12301(d). In addition, a member may be retained on active duty for a period beyond the normal expiration of orders pursuant to statutes and regulations of general applicability to members of the armed forces on active duty. *See* 10 USC § 12405; *Self, supra* at 135.

When appellant departed from his unit without leave, his unauthorized absence suspended the terminal date of his orders under the laws and regulations generally applicable to persons on active duty. *See* 10 USC § 972; AFI 36–2604, para. 5.1. If this were not the case, members of the armed forces would be able to avoid difficult, dangerous, or otherwise unpleasant service without facing disciplinary action simply by remaining AWOL for the remaining period of their active duty orders. Appellant remained in federal status on active duty through his entire period of unauthorized absence, which was ended on November 30, 1996. During this period, on November 3, 1995, his active duty orders were extended for an additional 60 days. Because this action was accomplished by officials in the State Guard and "by order of the Secretary of the Air Force," the November 3 order met the requirements of 10 USC § 12301(d)—federal action by the Service Secretary and consent by state officials. As a result of these actions, appellant's period of active service under the July 21, 1995, order to active duty, as amended by the November 3, 1995, order, extended for 73 days past the termination of his absence to February 10, 1997.

### B. *The discharge documents issued by state officials*

■ Although state consent may be required to modify orders issued under 10 USC § 12301(d) to add an additional period of federal duty, *see Self, supra* at 135, the state has no authority to shorten that period of active duty once an individual has moved from state to federal status. Appellant was relieved of his state National Guard duty as of the effective date of his orders to federal active duty. *See* 10 USC § 325(a). At that point, appellant's "state affiliation [was] ... suspended in favor of an entirely federal affiliation during the period of active duty." *Perpich, supra* at 349, 110 S.Ct. 2418.

It is noteworthy that several of the documents purporting to separate appellant indicate that they were issued "by order of the Governor" and none state that it was issued by order of the Secretary of the Air Force. No member of the Air Force "may be discharged or released before the expiration of a term of service (ETS) except as prescribed by the Secretary of the Air Force, by sentence of court-martial, or as otherwise prescribed by law." 46 MJ at 750 (quoting AFI 36–3208, para. 1.1.1.) The Court of Criminal Appeals, applying its expertise in the analysis of Air Force regulations, concluded that the documents purporting to discharge appellant were not issued by a person empowered to do so by a competent discharge authority. *Id.* at 749.

■ Absent a delegation of authority from the federal government, the state had no authority to terminate his period of federal service, whether through modification of his federal orders or termination of his state status. If the states were to have such power absent a federal delegation, it would undermine the authority of the federal government to provide for the effective training and deployment of members of the Guard while in federal service. *Cf. Perpich, supra* at 351, 110 S.Ct. 2418 (state authority over training "prior to active duty in the federal service does not include the right [of a state] to edit the discipline that Congress may prescribe for Guard members after they are ordered into federal service"). The discharge documents issued by the California ANG had no effect on the authority of the federal govern-

ment to retain jurisdiction over appellant until he was relieved by federal authorities from his federal duties. *Cf. Perpich, supra* at 347–48, 110 S.Ct. 2418. We hold that the actions by state officials purporting to discharge appellant did not affect his federal active duty status.

■■■ Even if the state had been delegated authority by the federal government to terminate appellant's federal status, the actions taken in this case did not comply with applicable laws and regulations. As noted by the Court of Criminal Appeals, the discharge actions undertaken by the California ANG in May, 1996, were undertaken by a personnel clerk, Master Sergeant (MSgt) Mikulovsky, not by a competent discharge authority. *See* 46 MJ at 749–50. Moreover, as noted by the Court of Criminal Appeals, MSgt Mikulovsky acted under an erroneous interpretation of AFI 36–2911. Under the Instruction, if a member is absent without authority for 6 months, the member must be "removed from the unit rolls." According to the Court of Criminal Appeals, MSgt Mikulovsky misinterpreted that provision as mandating appellant's complete discharge from military service. 46 MJ at 746.

The Court of Criminal Appeals also noted that even if a discharge had been warranted under the regulation, the actions purporting to separate appellant would not have been effective under the applicable principles governing termination of jurisdiction, which require: (1) delivery to the member of a valid discharge certificate or certificate of release from active duty; (2) a final accounting of pay such that the member's "final pay" or "a substantial part of that pay" is "ready for delivery" to the member; and (3) completion by the member of any final clearing procedures required by service regulations. *See King, supra* at 329.

In the present case, the discharge was not valid because it did not comport with the applicable regulation. Aside from the fact that the discharge documents were not issued by a competent authority, the Court of Criminal Appeals also noted that appellant did not meet the cited regulatory criteria or procedural requirements. The applicable regulation specifically required that a member facing discharge under other than honorable conditions must be afforded the opportunity for a hearing before a discharge board, or be afforded notice and an opportunity to respond if not facing such a discharge. 46 MJ at 750, citing AFI 36–3209, paras. 3.21 and 4.10; AFI 36–3208, para. 6.2.2. As noted by the Court of Criminal Appeals, there was no compliance with these minimum requirements in the present case. 46 MJ at 750.

Although not necessary to our conclusion about the invalidity of the discharge in this case, we also note that there is no evidence that a discharge was ever delivered to appellant. Even though two copies of the DD Form 214 were mailed to appellant's last known address in Oakland, California, appellant has presented no evidence of receipt. Moreover, there is no evidence of compliance with the requirements under *King* that appellant completed the clearance process or that he received any final accounting of pay in conjunction with this purported discharge process. *See* 46 MJ at 750.

In short, because the documents purporting to "discharge" him from federal service were not issued by a competent discharge authority, did not otherwise comply with applicable regulations, and were not accompanied by any of the steps necessary to complete the discharge process, these documents did not terminate appellant's status as a person subject to the jurisdiction of a court-martial.

### C. *Appellant's status when actions were taken with a view towards trial by court-martial*

■■■ Upon reporting for initial active duty training on July 27, 1995, appellant was "relieved of his ... status in the State Guard for the entire period of federal service." *Perpich, supra* at 346, 110 S.Ct. 2418. Both of the offenses at issue in the present case were committed while appellant was in active federal status. Appellant's extended unauthorized absence, coupled with the periods of federal active duty required under the actions issued by order of the Secretary of the Air Force, established a period of obligated

service through February 10, 1997. When appellant was apprehended by civilian authorities and turned over to military control on November 30, 1996, he was subject to the UCMJ. *See* Part III. A., *supra.*

The officials who released him from pretrial confinement and told him he was a civilian on December 2, 1996, did so under the erroneous belief that the actions taken by state officials had created a valid discharge from his federal military status. None of the conversations between appellant and military officials in December, 1996, constituted a discharge from military service under the principles set forth in *King, supra.*

Within a relatively brief period of time, and well before the expiration of his active duty obligation on February 10, 1997, federal military authorities undertook a number of actions with a view towards court-martial. Appellant was apprehended on January 7, 1997, and was placed in pretrial confinement. Charges were preferred on January 9, and a pretrial investigation under Article 32, UCMJ, was held on January 10. These actions, clearly taken with a view towards

court-martial, were more than sufficient to retain appellant on active duty past February 10, 1997, the date on which his active duty obligation would have expired under his orders and otherwise applicable law, for purposes of a trial in which charges were referred on February 12, 1997, and arraignment was held on March 27, 1997. See RCM 202(c)(2); *Self, supra* at 137–38; *Hudson, supra* at 419.* Under these circumstances, we conclude that the court-martial had jurisdiction over appellant, who was on active duty in federal service at the time of his offenses and remained on active duty in federal status during his trial.

## IV. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring):

I concur and note that the majority's reasoning is in accord with my separate opinion in *Smith v. Vanderbush,* 47 MJ 56, 63 (1997) (Sullivan, J., dissenting).

---

* In reaching this conclusion, we do not find it necessary to rely on the additional actions of the California National Guard in 1997 which purported to extend his federal active duty "by order of the Governor" through May 31, 1997, nor need we determine the impact of the actions by state officials in December 1996 and February 1997 purporting to revoke the discharges that had been issued under state authority.